**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

ALEXIS D. JOHNSON,                                        Civil Action

       Plaintiff,                                        No.    2:20-cv-885

  v.

P G PUBLISHING COMPANY,
t/d/b/a Pittsburgh Post Gazette,

      Defendant.                                        JURY TRIAL DEMANDED


## CIVIL COMPLAINT

Plaintiff, Alexis D. Johnson, by undersigned counsel and pursuant to Fed.R.Civ.P. 8  files the foregoing Civil Complaint seeking legal and equitable relief for the retaliation and race discrimination Defendant inflicted upon her.

### I. Jurisdiction

1.  The Jurisdiction of this Court is invoked pursuant  to Section 1 of the Civil Rights Act of 1866, 42 U.S.C. §1981 and  28 U.S.C §§1331 and 1343(a)(3).

### II. The Parties

2.  Plaintiff Alexis D. Johnson  is an adult individual who resides at 7918 Mt. Carmel Road, Verona, PA 15147.  She is an African-American.

3.  Defendant P G Publishing Company  is a corporation which operates a three-day a week newspaper, and a 4 day a week all digital news service  in the Western District of Pennsylvania known as the Pittsburgh Post Gazette.   Defendant's home office is located at 2201 Sweeney Drive, Clinton, PA, 15026, and its principal place of business is 358 North Shore Drive, Suite 300,

1

Pittsburgh, PA, 15212  At all times relevant to this action, Defendant was Johnson's  employer.

### III. Factual Background

4.   Johnson has worked for Defendant since October 2018, first as a Digital News Editor and then as a reporter. She had previously worked for newspapers in New Jersey and as a multi-medium reporter.

5.   Defendant often assigned Johnson to cover social issues that manifested themselves in on-line social media platforms.

6.   In performing her reporting duties, Johnson received assignments from Defendant and likewise was generally assigned to cover social media related stories.

7.   Johnson is one of only now-five  African American reporters employed by the Post Gazette.

8.   On or around May 25, 2020, white police in Minneapolis Minnesota killed George Floyd, an unarmed African American,  after he was handcuffed and on the ground following an arrest for suspicion of a non-violent minor offense.

9.   The aforesaid killing ignited nationwide protests and outrage.

10.   Those protests and outrage resulted in peaceful demonstrations in Pittsburgh, PA during the weekend of May 30-31, 2020  demanding racial justice  and opposing police tactics directed at African Americans.

11.   During those Pittsburgh area protests some property damage and unrest occurred, and several demonstrators were arrested.

12.   The property damage resulting in the otherwise non-violent protests became the focus of criticism from public officials who did not support the demands for racial justice and the tactics

of the protesters.

13.  On or about May 31, 2020, Johnson posted on her private Twitter account a photo objecting to the racial bias exhibited by those members of society and public officials who equated property damage to human life.

14.  Specifically, Johnson posted a tweet comparing the damage caused by looters with photos  showing the debris-strewn aftermath of a white country music star's yearly  concert in Pittsburgh, Pennsylvania.

15.  Accompanied by four photographs showing a parking lot filled with trash after a Kenny Chesney concerts in Pittsburgh,  Johnson ridiculed the idea that protesters in general and specifically African American protesters  seeking racial justice were destructive looters. She posted :

>  "Horrifying scenes and aftermath from selfish LOOTERS who don't care about this city!!!...oh wait sorry. No these are pictures from a Kenny Chesney concert tailgate. Whoops."

16.  By sharing these photographs and commentary on her private Twitter page, Johnson intended to mock and ridicule,  and thus to protest,  the racial bias and discrimination in a society that condemns  African Americans who oppose racial injustice by protests that result in some property damage,  while tolerates similar property damage by predominately white crowds who attend Chesney concerts.

17.  The Johnson Tweet was intended to--and did–mock, ridicule and protest  discrimination against African Americans by society in general and by whites who equate property damage with human life.

18.  Defendants assumed and interpreted Johnson's tweets as protests of and opposition to the aforesaid discrimination.

3

19.  The next day, June 1, 2020, three editors of the Post-Gazette, including its Managing Editor, told Johnson  her tweet showed she could not cover the protests fairly and that therefore she would not be assigned to report on them.

20.  Prior to this meeting,  Johnson had requested to develop stories about protesters who had been jailed for 72 hours on failure to disperse charges; protest bail fund-raises on social media, and campaigns on social media to help businesses which suffered property damage from the weekend demonstrations recover.

21.  Defendant's Managing Editor informed Johnson that because she had opposed and spoke out about  racism and the murder of black people at the hands of police, and offered an opinion opposing those things, she was theretofore precluded from covering any story involving protests or demonstrations concerning racial discrimination or the murder of black people by white police.

22.  Defendant informed Johnson that commenting on a matter in the news would preclude a reporter or journalist from thereafter covering that story.

23.  Shortly thereafter,  Michael Santiago, an African American Pulitzer Prize-winning photojournalist who was at the time employed by Defendant, and who had tweeted in support of Johnson's Twitter protest also was removed from photographing racial demonstrations.

24.  Santiago has since left Defendant's employ.

25.  Subsequently, more than 80 other journalists in the employ of Defendant joined Johnson's protest of the racial bias and discrimination in a society that condemns  African Americans who oppose racial injustice by protests that result in some property damage,  while at time tolerates similar property damage by predominately white crowds who attend Chesney concerts.

26.  Defendant's Executive Editor, and the Vice President  of Defendant's parent company,

4

in a published report, said Defendant likewise precluded those 80 opposing journalists from covering racial discrimination or the murder of black people by white police because they joined in Johnson's protest.

27.   Defendant has not treated reporters and journalists who have commented on bias toward whites in a similar manner.

28.   For example, Defendant's reporters who spoke out publicly against discrimination and hate after the 2018 shootings at the Tree of Life synagogue–which did not involve actions by police directed at African Americans–were not removed from covering that story,

29.   Moreover, Joshua Axelrod, a white employee of Defendant, tweeted about a man who was accused by police of vandalism and looting during the May protests, and referred to that man as a "scum bag."

30.   Nonetheless, Defendant did not initially prevent Axelrod from covering stories involving the protests.

31.   Precluding and removing Johnson from covering a major story is a materially adverse action, in that it would tend to dissuade a reasonable newspaper reporter from making or supporting claims of race discrimination.

**Count I**
**42 U.S.C. §1981**
**Retaliation**

32.   Plaintiff incorporates by reference the allegations in Paragraph 1 to 31 as if fully restated.

33.   Defendant precluded and removed Johnson, and others from covering major stories involving race based protests and demonstrations in retaliation for opposing race discrimination and

publically announcing her opposition to such practices.

34.   Precluding Johnson from covering major stories involving race based protests and demonstrations is a materially adverse employment action because a reasonable newspaper reporter would have been dissuaded from complaining of race discrimination had she known she would have been precluded from the assignment of coverage of a major story

35.   Defendant's actions in precluding and removing Johnson from coverage of race-based protests and demonstrations in retaliation for opposing race discrimination deprived Johnson of the same right to make and enforce contracts as is enjoyed by white citizens in violation of the Civil Rights Act of 1866, 42 U.S.C. §1981.

36.   Defendant's preclusion and removal of Johnson from covering major stories involving race based protests and demonstrations was undertaken with reckless indifference to Plaintiff's federally protected right to make and enforce contracts irrespective of her opposition to race discrimination.

37.   As a direct and proximate result of Defendant's discriminatory and retaliatory treatment, Johnson suffered the following injuries.

     a.     Great mental anguish and emotional strain;

     b.     Humiliation and inconvenience.

     c.     Diminished career advancement because of the inability to cover one of the major newspaper stories of her time.

WHEREFORE, Plaintiff demand judgment against Defendant pursuant to 42 U.S.C. §1981 as follows:

     a.     That Defendant be permanently enjoined from retaliating against Johnson because she opposed race discrimination;

b.   That defendant be ordered to cease precluding Johnson from coverage of racial discrimination protests and demonstrations

c.   That Defendant be required to compensate Johnson for the diminishment of her career advancement she   would have obtained had it not been for Defendant's illegal treatment

d.   That Johnson be awarded compensatory and punitive damages in an amount to be determined at trial;

e.   That Johnson be awarded against Defendant the costs and expenses of this litigation, and a reasonable attorney's fee; and

f.   That Johnson be awarded such further relief as this Court deems to be just and proper.

## Count II.
## 42 U.S.C. Section 1981
## Race Discrimination

38.   Plaintiff incorporates by reference the allegations in Paragraph 1 to 37  as if fully restated.

39.   Defendant precluded and removed Johnson, from covering major stories involving race based protests and demonstrations because of her race, and therefore. deprived Johnson of the same right to make and enforce contracts as is enjoyed by white citizens in violation of the Civil Rights Act of 1866, 42 U.S.C. §1981.

40.   Defendant's actions in precluding and removing Johnson from coverage of race-based protests and demonstrations because of her race  was  undertaken with reckless indifference to Plaintiff's  federally protected right to make and enforce contracts irrespective of her race.

41.  As a direct and proximate result of Defendant's discriminatory and retaliatory treatment, Johnson suffered the following  injuries.

a.   Great mental anguish and emotional strain;

7

      b.      Humiliation and inconvenience.

      c.      Diminished career advancement because of the inability to cover one of the major newspaper stories of her time.

WHEREFORE, Plaintiff demand judgment against Defendant pursuant to 42 U.S.C. §1981 as follows:

      a.      That Defendant be permanently enjoined from retaliating against Johnson because she opposed race discrimination;

      b.      That defendant be ordered to cease precluding Johnson from coverage of racial discrimination protests and demonstrations

      c.      That Defendant be required to compensate Johnson for the diminishment of her career advancement she would have obtained had it not been for Defendant's illegal treatment

      d.      That Johnson be awarded compensatory and punitive damages in an amount to be determined at trial;

      e.      That Johnson be awarded against Defendant the costs and expenses of this litigation, and a reasonable attorney's fee; and

      f.      That Johnson be awarded such further relief as this Court deems to be just and proper.

Respectfully submitted,

Rothman Gordon, P.C.

/S/ Samuel J. Cordes
Samuel J. Cordes
Pa. I.D. No. 54874
310 Grant Street
Third Floor, Grant Building
Pittsburgh, PA 15219
(412) 338-1163
Attorney for Plaintiff