UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALEXIS D. JOHNSON, | ) |
| Plaintiff, | ) Civil Action No. 2:20-cv-00885-NR |
| v. | ) |
| PG PUBLISHING COMPANY, | ) |
| Defendant. | ) |

**DEFENDANT'S REPLY TO
<u>PLAINTIFF'S RESPONSE TO MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ................................................................................................................. 1

ARGUMENT ......................................................................................................................... 2

I. THE AMENDED COMPLAINT CONTAINS NO PLAUSIBLE ALLEGATIONS OF DISCRIMINATION OR RETALIATION UNDER SECTION 1981 ............................... 2

    A.    Ms. Johnson's Tweets Were Not Protected Activity Under Section 1981 ............. 2

    B.    Ms. Johnson Suffered No Adverse Employment Action ........................................ 4

    C.    The Amended Complaint Disproves Plaintiff's Claim of Race-Based Discrimination .............................................................................................................. 6

II. THE FIRST AMENDMENT BARS LIABILITY FOR THE POST-GAZETTE'S EXERCISE OF EDITORIAL JUDGMENT ....................................................................... 8

CONCLUSION ...................................................................................................................... 10

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ampersand Publ'g LLC v. NLRB*,
 702 F.3d 51 (D.C. Cir. 2012) ................................................................................................... 9

*Associated Press v. NLRB*,
 301 U.S. 103 (1937) ................................................................................................................. 8

*Barber v. CSX Dist. Servs.*,
 68 F.3d 694 (3d Cir. 1995) .................................................................................................. 2, 3

*Bostock v. Clayton County*,
 140 S. Ct. 1731 (2020) ............................................................................................................. 6

*Burlington N. & Santa Fe Ry. Co. v. White*,
 548 U.S. 53 (2006) ................................................................................................................... 4

*Caplan v. L. Brands/Victoria's Secret Stores*,
 704 F. App'x 152 (3d Cir. 2017) ......................................................................................... 3, 4

*Comcast Corp. v. National Association of African American-Owned Media*,
 140 S. Ct. 1009 (2020) ............................................................................................................. 6

*Curay-Cramer v. Ursuline Academy of Wilmington, Del., Inc.*,
 450 F.3d 130 (3d Cir. 2006) ..................................................................................................... 3

*EEOC v. Crown Zellerbach Corp.*,
 720 F. 2d 1008 (9th Cir. 1983) ................................................................................................ 3

*Estate of Oliva ex rel. McHugh v. New Jersey*,
 604 F.3d 788 (3d Cir. 2010) ..................................................................................................... 2

*Flowers v. Columbia Coll. Chi.*,
 397 F.3d 532 (7th Cir. 2005) .................................................................................................... 3

*Hall v. Penn. State Police*,
 570 F.2d 86 (3d Cir. 1978) ....................................................................................................... 4

*Hausch v. Donrey of Nevada, Inc.*,
 833 F. Supp. 822 (D. Nev. 1993) ......................................................................................... 8, 9

*Hurley v. Irish-Am. Gay, Lesbian, & Bisexual Grp. of Boston*,
 515 U.S. 557 (1995) ................................................................................................................. 9

*IMDB.com v. Becerra*,
  962 F.3d 1111 (9th Cir. 2020) ...................................................................................10

*In re McDonald*,
  205 F.3d 606 (3d Cir. 2000)..........................................................................................4

*Lopez v. Alrod Enters., Inc.*,
  602 F. Supp. 2d 604 (E.D. Pa. 2009) ...........................................................................7

*Mahone v. Waddle*,
  564 F.2d 1018 (3d Cir. 1977).......................................................................................4

*McDermott v. Ampersand Publ'g LLC*,
  2008 WL 8628728 (C.D. Cal. 2008), *aff'd*, 593 F.3d 950 (9th Cir. 2010)...............9

*McMenemy v. City of Rochester*,
  241 F.3d 279 (2d Cir. 2001).........................................................................................3

*Miami Herald Publ'g Co. v. Tornillo*,
  418 U.S. 241 (1974)....................................................................................................10

*Neiderlander v. Am. Video Glass Co.*,
  80 F. App'x 256 (3d Cir. 2003) ................................................................................2, 3

*Newspaper Guild of Greater Phila., Local 10 v. NLRB*,
  636 F.2d 550 (D.C. Cir. 1980) ................................................................................9, 10

*Passaic Daily News v. NLRB*,
  736 F.2d 1543 (D.C. Cir. 1984)....................................................................................9

*Patterson v. Indiana Newspapers, Inc.*
  589 F.3d 357 (7th Cir. 2009) ....................................................................................5, 7

*Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Rights*,
  413 U.S. 376 (1973).................................................................................................9, 10

*Poblete v. Gannett*,
  2009 WL 10702941 (D. Haw. July 31, 2009)............................................................5

*Sumner v. U.S. Postal Serv.*,
  899 F.2d 203 (2d Cir. 1990).........................................................................................3

*Wada v. Tomlinson*,
  517 F. Supp. 2d 148 (D.D.C. 2007) .............................................................................5

**State Cases**

*Nelson v. McClatchy Newspapers, Inc.*,
  936 P.2d 1123 (Wash. 1997)..................................................................................9, 10

**Federal Statutes**

42 U.S.C. § 1981 ................................................................................................1, 2, 4, 6, 7, 8

**Constitutional Provisions**

U.S. Const. amend I .............................................................................................1, 2, 4, 8, 9, 10

**INTRODUCTION**

Disposition of the Pittsburgh Post-Gazette's Motion to Dismiss requires precisely identifying what actions Ms. Johnson alleges constituted a violation of her rights under Section 1981, and, equally as important, the true nature of the Post-Gazette's First Amendment defense. Ms. Johnson exaggerates both the nature of the acts she alleges constituted "discrimination" or "retaliation," and falsely asserts the Post-Gazette is seeking immunity from anti-discrimination laws as to any and all employment decisions by newspapers.

The sum total of Ms. Johnson's claim is that Post-Gazette editors declined to green-light three story ideas she pitched on June 1, 2020. Compl. ¶ 20. She was not "reassigned," as she repeatedly describes the editorial decision, Pl. Resp. to Mot. to Dismiss ("Opp.") 2, 10, 17, 18, nor was she "removed" from any story she had previously covered. *Id*. 1, 5, 11, 12. Apart from not getting requested assignments, Ms. Johnson alleges no adverse employment action of any kind. In conclusory fashion, she alleges the Post-Gazette's editorial decision was discriminatory, but her Amended Complaint acknowledges the editors informed her that "commenting on a matter in the news would preclude a reporter … from thereafter covering that story," Compl. ¶ 22, and that all Post-Gazette staff members who reposted her tweet were subject to the same policy, regardless of race. *Id*. ¶ 28. On its face, the Complaint fails to allege any plausible claims under Section 1981.

Ms. Johnson also misrepresents the First Amendment issue. She claims the Post-Gazette seeks "blanket immunity from all hiring decisions because it is a newspaper," with the implication that it could "maintain a racially pure newsroom." Opp. 14, 16. This is an obvious and extreme distortion, as this case has nothing to do with hiring decisions, and there are no allegations – nor could there be – about the Post-Gazette excluding minorities from its staff. Rather, Ms. Johnson asks this Court to second-guess the Post-Gazette's news judgment and find it violated federal law, because its editors declined Ms. Johnson's request to "develop stories about protestors who had

1

been jailed for 72 hours on failure to disperse charges; protest bail fund-raises [sic] on social media, and campaigns on social media to help businesses which suffered property damage from the weekend demonstrations[.]" Compl. ¶ 20. There is no authority that the First Amendment would permit the use of antidiscrimination laws to micromanage such matters of editorial judgment.

## ARGUMENT

### I. THE AMENDED COMPLAINT CONTAINS NO PLAUSIBLE ALLEGATIONS OF DISCRIMINATION OR RETALIATION UNDER SECTION 1981

Notably absent from the Opposition is any attempt to address the Post-Gazette's showing that its decision to prohibit *all* of its journalists who retweeted Ms. Johnson's tweet from covering protests conclusively rebuts any inference of race-based discrimination, Mot. 7-9; that a plaintiff must first plead an underlying violation of Section 1981 to plead a claim of retaliation, *id*. 11-12 (discussing *Estate of Oliva ex rel. McHugh v. New Jersey*, 604 F.3d 788 (3d Cir. 2010)); or that the way Ms. Johnson expressed opposition to societal discrimination so compromised her ability to report on protests that her tweet could not constitute protected activity as a matter of law. *Id*. 13-15. Ms. Johnson thus concedes these points, and the Court can dismiss her Section 1981 discrimination and retaliation claims on these bases alone. Nevertheless, insofar as the Court is inclined to look past these deficiencies, the Post-Gazette addresses the Opposition's arguments below.

#### A. Ms. Johnson's Tweets Were Not Protected Activity Under Section 1981

Ms. Johnson's claim of retaliation under Section 1981 depends on the broad proposition that *any* public statement concerning police brutality or racism in "society in general" constitutes protected activity – a premise for which there is no support in law, and that the Third Circuit expressly rejects. Reliance on such cases as *Barber v. CSX Distribution Services* and *Neiderlander v. American Video Glass* for this claim is misplaced. Opp. 6. Both cases concerned alleged discriminatory acts *by the employer* rather than by society in general. *See Barber v. CSX Dist.*

2

*Servs.*, 68 F.3d 694, 702 (3d Cir. 1995) ("a general complaint of unfair treatment does not translate into a charge of illegal *age* discrimination" on the employer's part); *Neiderlander v. Am. Video Glass Co.*, 80 F. App'x 256, 260-61 (3d Cir. 2003) (alleged protected conduct did not involve complaint about "discrimination by industry or by society in general," but instead involved plaintiff's informal complaints to her colleagues of gender-based workplace discrimination).[1]

As explained in the Post-Gazette's motion, the Third Circuit expressly *rejected* Ms. Johnson's expansive theory of protected activity in *Curay-Cramer v. Ursuline Academy of Wilmington, Del., Inc.*, 450 F.3d 130 (3d Cir. 2006). Mot. 12-13. The court noted the *Sumner* dictum regarding protests about "society in general," and acknowledged its references in Third Circuit cases such as *Barber*, yet concluded: "we are not aware of any court that has found public protests or expressions of belief to be protected conduct absent some perceptible connection to the employer's alleged illegal employment practice." *Curay-Cramer*, 450 F.3d at 135. None of the Opposition's cases are to the contrary.[2]

The social media post in *Caplan v. L. Brands/Victoria's Secret Stores*, 704 F. App'x 152 (3d Cir. 2017), which Ms. Johnson claims is "nearly identical" to her tweet, Opp. 7-9, is readily distinguished. The language the Opposition cites, where the Court noted the post concerning the

---

[1] The language about "society in general" upon which Ms. Johnson relies does not come from any Third Circuit holding, but from a single line of dictum in a Second Circuit case, *Sumner v. U.S. Postal Serv.*, 899 F.2d 203 (2d Cir. 1990), that was quoted in *Barber*, 68 F.3d at 702, and *Neiderlander*, 80 F. App'x at 260.

[2] *See EEOC v. Crown Zellerbach Corp.*, 720 F. 2d 1008, 1014 (9th Cir. 1983) (employees' correspondence complained of *employer's* alleged discriminatory conduct, not generalized discrimination in society) (Opp. 6); *Flowers v. Columbia Coll. Chi.*, 397 F.3d 532, 535 (7th Cir. 2005) (protected activity where complaint about employment conditions was directed at school district that community college employee served) (Opp. 4); *McMenemy v. City of Rochester*, 241 F.3d 279, 284-85 (2d Cir. 2001) (complaint involved "two employers [with] relationship that may give one … incentive to retaliate for an employee's protected activities against the other") (Opp. 4).

Los Angeles Clippers' owner "could properly be interpreted as mocking a racist business owner," *id.* at 154, highlights the difference between Ms. Johnson's tweet and Caplan's social media post. As the Amended Complaint makes clear, Ms. Johnson was not "mocking a racist business owner," but instead commented on "society in general." Compl. ¶ 17. Moreover, in *Caplan*, the Third Circuit *affirmed* dismissal of the Section 1981 claim, rendering any dictum on this point a "peripheral [statement which] may not have received the full and careful consideration" of the Third Circuit. *In re McDonald*, 205 F.3d 606, 612 (3d Cir. 2000). Even if it were on point, however, the unpublished *Caplan* opinion is non-precedential.[3]

### B. Ms. Johnson Suffered No Adverse Employment Action

Contrary to the Opposition's repeated assertions, Ms. Johnson was not "reassigned" or "removed" from covering the stories she pitched the morning of June 1, 2020. Opp. 10-12. The Amended Complaint alleges only that she pitched three story ideas that day and the Post-Gazette's editors declined to assign those stories to her. Compl. ¶¶ 20-21. This is an unremarkable event that occurs in newsrooms throughout the United States on a daily basis, and does not constitute an adverse employment action. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (an employee's protected activity "cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience").

---

[3] The Third Circuit's inexplicable reference in *Caplan* to the "protective umbrella of the First Amendment" in the context of a Section 1981 claim asserted against a private employer further indicates that the passage on which Ms. Johnson relies was not a product of the Third Circuit's fullest and most careful consideration. *See* 704 F. App'x at 154. Similarly misplaced are arguments concerning Section 1981's guarantee of "equal benefit" and "like punishment." As the Opposition correctly notes, "Section 1981 is not confined to contractual matters *when a government entity is involved.*" *Hall v. Penn. State Police*, 570 F.2d 86 (3d Cir. 1978) (quoted Opp. 5) (emphasis added). However, the Post-Gazette is a *private* employer not a state actor, rendering all cases cited on this point irrelevant. *See Mahone v. Waddle*, 564 F.2d 1018 (3d Cir. 1977) (defendants were police officers the City of Pittsburgh) (Opp. 5); *Hall*, 570 F.2d 86 (naming various state officials as defendants) (Opp. 5).

4

According to the Amended Complaint, the Post-Gazette "often assigned [Ms.] Johnson to cover social issues that manifested themselves in online social media platforms." Compl. ¶ 5. "In performing her reporting duties, [Ms.] Johnson received assignments from Defendant and likewise was generally assigned to cover social media related stories." *Id*. ¶ 6. Nothing in the Complaint suggests those duties changed after Ms. Johnson's tweet of May 31, 2020 – because they did not. Plaintiff's "beat" remained the same, as did her job title, rate of pay, and all other aspects of her employment with the Post-Gazette.

This distinguishes Ms. Johnson from the plaintiffs in cases the Opposition cites. She was not, for example, "transfer[red] from editorial writing to copy editing," Opp. 10 (citing *Patterson v. Indiana Newspapers, Inc.* 589 F.3d 357 (7th Cir. 2009)), nor "[r]eassign[ed] to a different newspaper section." *Id.* (citing *Poblete v. Gannett*, 2009 WL 10702941 (D. Haw. July 31, 2009)). The Complaint also does not allege Ms. Johnson was stripped of editorial responsibilities, as in *Wada v. Tomlinson*, 517 F. Supp. 2d 148 (D.D.C. 2007) (cited Opp. 10-11). If anything, the cases that the Opposition cites highlight that, in declining to assign to Ms. Johnson the stories she pitched to her editors, the Post-Gazette did *not* take any adverse employment action against her.[4]

Similarly absent from the Amended Complaint is any allegation suggesting that the Post-Gazette was under a duty to assign to Ms. Johnson every story concerning any aspect of social media that she pitched. To be clear, the Post-Gazette did *not* "remove … Ms. Johnson from the very subject she was assigned to cover." Opp. 11 n.7. She remained assigned to the social media beat she always had, and the Complaint alleges nothing to the contrary. Ms. Johnson also remained

---

[4] Claims of discrimination and retaliation were rejected in each of these cases. Notably, in *Patterson*, the Seventh Circuit observed that the newspaper's refusal to publish an editorial written by plaintiff and telling her "not to proselytize at work hardly establishes that the *Star* subjected her to an intolerably discriminatory workplace." 589 F.3d at 366.

5

free to pitch stories concerning any aspect of social media which did *not* concern issues on which she had offered public commentary. The Opposition fails to demonstrate why the Court should not grant the Post-Gazette the relief it seeks by dismissing the Complaint.

### C. The Amended Complaint Disproves Plaintiff's Claim of Race-Based Discrimination

Contrary to Ms. Johnson's claims, the Post-Gazette did not argue she is an at-will employee without contractual rights. Opp. 13. Rather, its position is that her contractual rights are coextensive with any other Post-Gazette reporter, regardless of race, and that reporters do not have contractual rights to dictate the stories they cover. In this regard, the Complaint conclusively demonstrates that the Post-Gazette treated all reporters who retweeted Ms. Johnson's tweet equally, regardless of race, thus undercutting any possible claim of discrimination. Compl. ¶¶ 23, 28-29.

Ms. Johnson's reliance on *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020), to claim she has adequately pled causation is entirely misplaced. Opp. 13. She asks this Court to apply the reasoning in *Bostock* – a case concerning a claim under Title VII – to determine whether her Section 1981 claim withstands the motion to dismiss. However, *Bostock* has no relevance to that claim in light of the Supreme Court's opinion in *Comcast Corp. v. National Association of African American-Owned Media*,[5] which expressly rejected the proposition that the standard for determining causation under Title VII applies to Section 1981 claims. *See* 140 S. Ct. 1009, 1017 (2020) (noting "critical examination of Title VII's history reveals more than a few reasons to be wary of any invitation to import its motivating factor test into § 1981," and instead adopting the rule that a

---

[5] *Bostock* involved claims of sex-based discrimination under Title VII. For some purposes – such as determining whether an employee has engaged in protected conduct – judicial analysis of a claim under Section 1981 is generally coextensive with that applied to a claim under Title VII. However, where, as here, the Supreme Court has articulated two separate standards for analyzing claims under Title VII and Section 1981, attempts to conflate the two statutes are unavailing.

6

plaintiff asserting a Section 1981 claim must show race was the but-for motivating factor for the challenged action).

Under this binding precedent – and even assuming for purposes of this Motion that, after advising Ms. Johnson she was precluded from covering matters on which she'd expressed a public opinion, Managing Editor Karen Kane sometime later commented that she "can't now do anything to Black people" and had to "pick better targets" – the Amended Complaint nonetheless fails to plead with plausibility that Ms. Johnson was denied contractual rights due to race.  The Complaint alleges Ms. Johnson was one of approximately five African American reporters employed at the Post-Gazette, Compl. ¶ 7, and it barred approximately 80 reporters from covering protests after they republished Ms. Johnson's tweet.  *Id.* ¶ 29.  As set forth in the motion to dismiss (and unaddressed in the Opposition), these allegations squarely identify public expressions of opinion – *not* race – as the consideration animating these editorial decisions.[6]

Were there any ambiguity on this point, the first page of the Opposition dispels it by proclaiming:  "Ms. Kane **actually** told [Ms.] Johnson that *because she had opposed and spoke out about racism*," she was precluded from covering stories about the protests.  Opp. 1 (emphasis original).  As explained in the Motion, the allegations regarding Ms. Kane's alleged statements are

---

[6] It avails Ms. Johnson nothing to claim the Post-Gazette "did not initially prevent [Joshua] Axelrod from covering stories involving the protests" after tweeting about them.  Compl. ¶¶ 32-33.  It is plain from this allegation that the Post-Gazette *did* preclude Axelrod from covering the protest – the fact that it did not do so on Ms. Johnson's preferred timeline does not support an inference of discrimination in light of the Amended Complaint's remaining allegations.  Similarly unavailing are Ms. Johnson's generalized allegations regarding the Post-Gazette's exercise of editorial discretion in the wake of the Tree of Life shootings.  Compl. ¶ 31.  Not only are such decisions outside the scope of judicial purview (*see* § II, *infra*), Ms. Johnson fails to draw a comparison between herself and employees who were similarly situated to her in all material respects, as she must to support an inference of discrimination.  *Lopez v. Alrod Enters., Inc.*, 602 F. Supp. 2d 604, 610 n.8 (E.D. Pa. 2009).  *See Patterson*, 589 F.3d at 365-66 ("similarly situated employees must be 'directly comparable' to the plaintiff 'in all material respects'") (citation omitted).

7

fabricated. Mot. 11. But for purposes of the Motion, Ms. Johnson's own assertions show that it was the content of her tweet, not the color of her skin, that motivated the Post-Gazette's editorial decisions. Accordingly, her claim of discrimination under Section 1981 must be dismissed.

## II. THE FIRST AMENDMENT BARS LIABILITY FOR THE POST-GAZETTE'S EXERCISE OF EDITORIAL JUDGMENT

The Plaintiff's argument that the First Amendment does not bar her claims is predicated entirely on the strawman assertion that the Post-Gazette claims blanket exemption from all anti-discrimination laws. Opp. 14, 16. But the question here is not whether newspapers are subject to generally applicable laws. No one has suggested otherwise. It is whether they can be applied to restrict a newspaper's editorial judgment, including its ethics rules. Here, the authorities uniformly hold such laws cannot be so applied, even when they seek to prohibit discrimination. Mot. 17-20.

The few cases the Opposition cites are not to the contrary. Both *Associated Press v. NLRB*, 301 U.S. 103 (1937), and *Hausch v. Donrey of Nevada, Inc.*, 833 F. Supp. 822 (D. Nev. 1993), addressed solely the question of blanket immunity. The "unsound generalization" in *Associated Press* (which Ms. Johnson falsely accuses the Post-Gazette of repeating), Opp. at 15, was whether a newspaper had "special immunity from … general laws."[7] Ever since that early Supreme Court decision, courts have uniformly held the First Amendment bars application of general labor law to newspapers in ways that would interfere with their ability to adopt and enforce "standards of integrity, objectivity, and fairness, and to protect and enhance its quality and credibility." Mot. at

---

[7] *Associated Press*, 301 U.S. at 131-32. The Court found it was undisputed that the employee discharged in that case had been fired for engaging in union activities, that no issue had been raised about whether he violated policies protecting the impartiality of the news, and that "[n]o such question is here for decision." *Id*. at 132. To the contrary, it affirmed that nothing in its ruling "circumscribes the full freedom and liberty of the petitioner to publish the news as it desires it published or to enforce policies of its own choosing with respect to the editing and rewriting of news for publication, and the petitioner is free at any time to discharge … any editorial employee who fails to comply with the policies it may adopt." *Id*. at 133.

8

18 (quoting *Newspaper Guild of Greater Phila., Local 10 v. NLRB*, 636 F.2d 550, 555 (D.C. Cir. 1980)). *See also Ampersand Publ'g LLC v. NLRB*, 702 F.3d 51, 56 (D.C. Cir. 2012); *Passaic Daily News v. NLRB*, 736 F.2d 1543, 1557-58 (D.C. Cir. 1984).[8] The Supreme Court's decision in *Hurley v. Irish-Am. Gay, Lesbian, & Bisexual Grp. of Boston*, 515 U.S. 557, 578-79 (1995), and cases decided in its wake have made clear that the same principle limits the scope of antidiscrimination laws. *See* Mot. 17-20 (collecting cases).

*Hausch* (which predates *Hurley*) does not alter this conclusion. *Hausch* was a standard employment case where "[t]he precise issue before the Court" was whether the First Amendment renders the application of Title VII to high ranking newspaper employees *per se* unconstitutional, and where defendants "made no allegations that their ability to control the integrity or credibility of their publication is affected by Title VII." *Hausch*, 833 F. Supp. at 827, 829. Because of this, *Hausch* was expressly distinguished by later cases cited in the Post-Gazette's Motion to Dismiss, including *Nelson v. McClatchy Newspapers, Inc.*, 936 P.2d 1123, 1133 (Wash. 1997) (*en banc*) (finding *Hausch* not on point because the paper had not alleged its ability to control integrity and credibility was affected by the antidiscrimination laws), and *McDermott v. Ampersand Publ'g LLC*, 2008 WL 8628728, at *12 n.8 (C.D. Cal. 2008) (distinguishing *Hausch*), *aff'd*, 593 F.3d 950, 962 (9th Cir. 2010). *Hausch* has no application here, where Ms. Johnson's Complaint focuses on the Post-Gazette's editorial policies and judgment.[9]

---

[8] Ms. Johnson tries to distinguish these cases in a footnote, arguing that the First Amendment may guarantee the right of newspapers to adopt ethical rules but does not protect their pretextual use for discriminatory purposes. Opp. 16 n.8. The D.C. Circuit rejected a similar argument in *Ampersand Publ'g*, 702 F.3d at 58-59, finding the allegation of "pretext" irrelevant where the alleged "protected activity" was a union's effort to alter the newspaper's editorial standards. The same reasoning applies here, where Ms. Johnson's complaint is that the newspaper failed to make assignments she wanted contrary to the Post-Gazette's Social Media Policy.

[9] Likewise, Plaintiff finds no support in *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Rights*, 413 U.S. 376 (1973). Opp. 15. *Pittsburgh Press* was limited to restrictions on

In opposing the Post-Gazette's First Amendment defense, Ms. Johnson misrepresents both her own position as well as that of the newspaper. She claims she "never contended Defendant should have published any particular article" nor seeks "to limit Defendant's exercise of editorial control and judgment," Opp. 18, yet that is precisely what she is doing. This lawsuit would never have been filed if the editors had acceded to one or more of Ms. Johnson's three story pitches, contrary to the newspaper's journalistic standards. Her claims relate *solely* to the Post-Gazette's editorial judgment. In trying to bolster her vacuous claim, Ms. Johnson grossly distorts both the newspaper's actions and arguments. Nothing in the Amended Complaint even remotely suggests the Post-Gazette was "choosing a white reporter over a black reporter" or sought to "maintain a racially pure newsroom," Opp. 14, and the newspaper has never argued that "race equals content." *Id*. 14-15. The Post-Gazette merely applied the same ethical standards to all its reporters, which is exactly what the First Amendment protects.[10]

## CONCLUSION

For the reasons above and for those stated in the Motion to Dismiss, Defendant respectfully requests that the Court dismiss the Amended Complaint with prejudice.

---

illegal advertising, and did not extend to matters of the newspaper's editorial judgment. The Court explained that its decision did not countenance "any restriction whatever, whether of content or layout, on stories or commentary originated by Pittsburgh Press, its columnists, or its contributors." *Id.* at 391. *See Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 255 (1974) (*Pittsburgh Press* "took pains to limit its holding within narrow bounds"); *IMDB.com v. Becerra*, 962 F.3d 1111, 1123 (9th Cir. 2020) ("*Pittsburgh Press* implicates only those instances when the state restricts speech that itself proposes an illegal transaction.").

[10] *Newspaper Guild of Greater Phila.*, 636 F.2d at 560 ("protection of the editorial integrity of a newspaper lies at the core of publishing control" and is "within the First Amendment's zone of protection and therefore entitled to special consideration"); *McClatchy Newspapers*, 936 P.2d at 1133 ("Case law unambiguously allows a news publication to follow a code designed to limit conflicts of interest which may diminish publication credibility.").

                Respectfully submitted,

                PG PUBLISHING COMPANY

                By its attorneys,

                /s/ *Robert Corn-Revere*
                      Robert Corn-Revere

                Robert Corn-Revere (*pro hac vice*)
                Ronald London (*pro hac vice*)
                Courtney T. DeThomas (*pro hac vice*)
                **DAVIS WRIGHT TREMAINE LLP**
                1301 K Street NW, Suite 500 East
                Washington D.C. 20005
                202-973-4200
                bobcornrevere@dwt.com
                ronnielondon@dwt.com
                courtneydethomas@dwt.com

                Patrick K. Cavanaugh
                **DEL SOLE CAVANAUGH STROYD LLC**
                Three PPG Place, Suite 600
                Pittsburgh, PA 15222
                412-261-2395 (phone)
                pcavanaugh@dscslaw.com

Dated: November 17, 2020