**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

_____
                                        )
ALEXIS D. JOHNSON                       )
                                        )
                    Plaintiff,          )
                                        )
v.                                      )     Civil Action No. 2:20-cv-885-NR
                                        )
PG PUBLISHING COMPANY,                  )
                                        )
                                        )
                    Defendant.          )
_____)


**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO CERTIFY
THE COURT'S AUGUST 17 ORDER FOR INTERLOCUTORY APPEAL
AND TO STAY DISCOVERY**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

I.      THIS COURT SHOULD CERTIFY ITS AUGUST 17 ORDER FOR
        INTERLOCUTORY APPEAL UNDER SECTION 1292(b) .......................................... 3

        A.      The Order Turns on Controlling Questions of Law ................................... 3

                1.      The Order Failed to Resolve Dispositive First Amendment
                        Questions ....................................................................................... 3

                2.      The Order Failed to Address the "But-For" Pleading Standard
                        Under Section 1981 ....................................................................... 6

        B.      There is a Substantial Basis for Difference of Opinion ......................... 8

                1.      First Amendment Issues ................................................................ 8

                2.      Section 1981 Issues ....................................................................... 9

        C.      Immediate Appeal Will Materially Advance Termination of the Litigation ........ 11

II.     THE COURT SHOULD STAY DISCOVERY PENDING RESOLUTION OF
        ANY INTERLOCUTORY APPEAL .......................................................................... 13

CONCLUSION ................................................................................................................. 14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Ahrenholz v. Bd. of Trs. of Univ. of Ill.*,
219 F.3d 674 (7th Cir. 2000) ............................................................................................1, 4

*Ampersand Publ'g LLC v. NLRB*,
702 F.3d 51 (D.C. Cir. 2012) ................................................................................................4

*Associated Press v. NLRB*,
301 U.S. 103 (1937)............................................................................................................3, 6

*Balintulo v. Daimler AG*,
727 F.3d 174 (2d Cir. 2013).....................................................................................................1

*Beazer East, Inc. v. Mead Corp.*,
2006 WL 2927627 (W.D. Pa. Oct. 12, 2006) ....................................................................5, 12

*Claybrooks v. American Broadcasting Companies, Inc.*,
898 F. Supp. 2d 986 (M.D. Tenn. 2012).......................................................................5, 6, 9, 12

*Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*,
140 S. Ct. 1009 (2020)....................................................................2, 6, 7, 8, 10, 11, 12

*Consumer Fin. Protection Bureau v. Navient Corp.*,
--- F. Supp. 3d ---, 2021 WL 772238 (M.D. Pa. Feb. 26, 2021)......................5, 8, 9, 12, 13, 14

*Curay-Cramer v. Ursuline Academy of Wilmington, Delaware, Inc.*,
450 F.3d 130 (3d Cir. 2006).................................................................................................11

*Ellis v. Bank of N.Y. Mellon Corp.*,
2020 WL 2557902 (W.D. Pa. May 20, 2020),
*aff'd*, 837 F. App'x 940 (3d Cir. 2021)...............................................................................10

*Ema Fin., LLC v. Vystar Corp.*,
2020 WL 4808650 (S.D.N.Y. Aug. 18, 2020).........................................................................14

*Giansante v. Pittsburgh Pub. Schs.*,
2019 WL 2754637 (W.D. Pa. July 2, 2017) ..............................................................................8

*Glover v. Urden*,
2013 WL 3072377 (W.D. Pa. June 18, 2013).........................................................................4

*Gross v. FBL Fin. Servs., Inc.*,
557 U.S. 167 (2009)..............................................................................................................10

*Hurley v. Irish-Am. Gay, Lesbian, & Bisexual Grp. of Boston*,
    515 U.S. 557 (1995)...........................................................................................2, 6

*Katz v. Carte Blanche Corp.*,
    496 F.2d 747 (3d Cir. 1974)..................................................1, 4, 6, 12, 13, 14

*Klinghoffer v. S.N.C. Achille Lauro*,
    921 F.2d 21 (2d Cir. 1990).........................................................................5

*Lively v. WAFRA Inv. Advisory Grp., Inc.*,
    6 F.4th 293 (2d Cir. 2021) ........................................................................10

*Lupian v. Joseph Cory Holdings, LLC*,
    2017 WL 1483313 (D.N.J. Apr. 24, 2017) ...............................................13

*Maestri v. Westlake Excavating Co.*,
    894 F. Supp. 573 (N.D.N.Y. 1995)..............................................4, 12, 13

*McClatchey v. Associated Press*,
    2007 WL 1720080 (W.D. Pa. June 8, 2007)...............................................12

*McDermott v. Ampersand Publ'g LLC*,
    593 F.3d 950 (9th Cir. 2010) ......................................................................4

*Miami Herald Pub. Co. v. Tornillo*,
    418 U.S. 241 (1974)............................................................................3, 5, 6

*Mineworkers' Pension Scheme v. First Solar Inc.*,
    881 F.3d 750 (9th Cir. 2018) ......................................................................8

*Mohawk Indus., Inc. v. Carpenter*,
    558 U.S. 100 (2009).....................................................................................1

*N.J. Protection & Advocacy, Inc. v. N.J. Dep't of Educ.*,
    2008 WL 4692345 (D.N.J. Oct. 8, 2008)...................................5, 12, 13

*Newspaper Guild of Greater Phila., Local 10 v. NLRB*,
    636 F.2d 550 (D.C. Cir. 1980) ...............................................................2, 4

*Pen Am. Ctr., Inc. v. Trump*,
    2020 WL 5836419 (S.D.N.Y. Oct. 1, 2020) ....................8, 9, 11, 13, 14

*Pub. Int. Research Grp. of N.J., Inc. v. Hercules, Inc.*,
    830 F. Supp. 1549 (D.N.J. 1993) ..............................................................13

*Reese v. BP Exploration (Alaska) Inc.*,
    643 F.3d 681 (9th Cir. 2011) ...................................................................8, 9

*Retirement Sys. v. Toll Bros., Inc.*,
  2009 WL 10684918 (E.D. Pa. Sept. 21, 2009) ....................................5, 13

*Rhoades v. Young Women's Christian Ass'n of Greater Pittsburgh*,
  2011 WL 240149 (W.D. Pa. Jan. 24, 2011)............................................5

*Rodriguez v. CP Dev., Inc.*,
  2021 WL 3037712 (W.D. Pa. July 19, 2021) ..........................................10

*Sayles v. Allstate Ins. Co.*,
  2017 WL 2985402 (M.D. Pa. July 13, 2017)............................................13

*SEC v. Credit Bancorp, Ltd.*,
  103 F. Supp. 2d 223 (S.D.N.Y. 2000)......................................................11

*Sharifi Takieh v. Banner Health*,
  515 F. Supp. 3d 1026 (D. Ariz. 2021),
  *appeal docketed*, No. 21-15326 (9th Cir. Feb. 24, 2021) ......................10

*Telescope Media Grp. v. Lucero*,
  936 F.3d 740 (8th Cir. 2019) ..................................................................6

*United States ex rel. Brown v. Pfizer, Inc.*,
  2017 WL 2691927 (E.D. Pa. June 22, 2017) ...............................5, 12, 13

*United States ex rel. Quartararo v. Catholic Health Sys. of Long Island, Inc.*,
  --- F. Supp. 3d ---, 2021 WL 681085 (E.D.N.Y. Feb. 22, 2021), *appeal
  docketed*, No. 21-1534 (2d Cir. June 23, 2021)......................8, 11, 12, 13

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*,
  570 U.S. 338 (2013)................................................................................10

*Utah v. Kennecott Corp.*,
  14 F.3d 1489 (10th Cir. 1994) ................................................................11

*Valentin v. Esperanza Hous. Counseling*,
  834 F. App'x 745 (3d Cir. 2021) ............................................................10

**State Cases**

*Nelson v. McClatchy Newspapers, Inc.*,
  936 P.2d 1123 (Wash. 1997)....................................................................4

**Federal Statutes**

28 U.S.C. § 1292(b) .........................................................1, 3, 4, 8, 11, 12, 13, 14

42 U.S.C. § 1981.............................................................1, 2, 5, 6, 7, 8, 9, 10, 11, 12

Civil Rights Act of 1964 Title VII ...........................................................................6, 10

**Rules**

Fed. Rule Civ. P. 26(c)..............................................................................................13

Fed. Rule Civ. P. 12(b) .............................................................................................10

Fed. Rule Civ. P. 12(b)(6)............................................................................................6

Fed. Rule Civ. P. 26(d) .............................................................................................14

**Constitutional Provisions**

U.S. Const. amend. I ..............................................................................1, 3, 4, 5, 6, 8, 9

## INTRODUCTION

This case presents the question of whether a newspaper publisher's decision to decline a reporter's story pitches in order to uphold standards of journalistic ethics raises a cognizable claim under 42 U.S.C. § 1981 ("Section 1981"). Defendant PG Publishing Company requests that this Court certify its August 17 Order denying its Motion to Dismiss for immediate appeal under 28 U.S.C. § 1292(b) to address two questions: (1) Whether the First Amendment bars liability under Section 1981 where the alleged discriminatory conduct is limited to an editorial decision about what stories to pursue; and (2) Whether a plaintiff has failed to plead but-for causation as required by Section 1981 where the assignment decision was made based on an ethical standard of journalism that was applied equally to all staff members, regardless of race.

Certification is appropriate under Section 1292(b) when (1) an interlocutory decision presents a controlling question of law, (2) a substantial basis exists for a difference of opinion on the question, and (3) immediate appeal will materially advance the termination of the litigation. 28 U.S.C. § 1292(b); *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974). It is "the duty of the district court … to allow an immediate appeal to be taken when the statutory criteria are met." *Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 677 (7th Cir. 2000). Particularly where a ruling "'involves a new legal question or is of special consequence,' … the district court 'should not hesitate to certify an interlocutory appeal.'" *Balintulo v. Daimler AG*, 727 F.3d 174, 186 (2d Cir. 2013) (quoting *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 111 (2009)).

Whether a newspaper can be subjected to liability under Section 1981 for declining a reporter's story pitches in order to uphold standards of professional journalism clearly qualifies as a matter of special consequence. In addressing questions that lie at the heart of this case, the Supreme Court has held unanimously that "[t]he Speech Clause has no more certain antithesis" than to allow government to intrude on editorial decisions, even where the state seeks to enforce

antidiscrimination statutes. *Hurley v. Irish-Am. Gay, Lesbian, & Bisexual Grp. of Boston*, 515 U.S. 557, 578-79 (1995). Notwithstanding the legitimate application of general economic regulations to newspapers – a proposition not questioned here – courts have uniformly found "that protection of the editorial integrity of a newspaper lies at the core of publishing control," and as such, "editorial control and the ability to shield that control from outside influences are within the First Amendment's zone of protection and … entitled to special consideration." *Newspaper Guild of Greater Phila., Local 10 v. NLRB*, 636 F.2d 550, 560 (D.C. Cir. 1980).

This case also presents fundamental issues concerning the application of 42 U.S.C. § 1981, and, more specifically, the recent decision in *Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 140 S. Ct. 1009 (2020). In *Comcast*, the Supreme Court held that Section 1981 requires a plaintiff to "initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." *Id.* at 1019. At its essence, the question is "what would have happened if the plaintiff had been white?" "If the defendant would have responded the same way to the plaintiff even if he had been white" then a Section 1981 claim cannot lie. *Id.* at 1015. Here, there was no factual question as to what would have happened to white reporters for commenting on social media about an ongoing news story, as Plaintiff did. Plaintiff's complaint admits that when other journalists, including white journalists, posted the same commentary on their social media pages, the Post-Gazette applied its policy in a non-discriminatory manner regardless of the employee's race, and treated them the same as Plaintiff. The Court's recent order did not address the but-for requirement of *Comcast*, and this too is a controlling issue justifying immediate review by the Third Circuit.

I.    **THIS COURT SHOULD CERTIFY ITS AUGUST 17 ORDER FOR INTERLOCUTORY APPEAL UNDER SECTION 1292(b)**

A.    **The Order Turns on Controlling Questions of Law**

1.    **The Order Failed to Resolve Dispositive First Amendment Questions**

This Court denied the Post-Gazette's motion to dismiss on First Amendment grounds, reasoning that "while the First Amendment provides a publisher absolute discretion to refrain from publishing content, *see Miami Herald Pub. Co. v. Tornillo*, 418 U.S. 241, 256-58 (1974), this discretion does not extend to allow a publisher to make any and all discriminatory personnel decisions, *see Associated Press v. NLRB*, 301 U.S. 103, 131-33 (1937)."  ECF 37, Mem. Order at 2 ("Order").  However, this case is not about "any and all discriminatory personnel decisions."  It is focused *solely* on the Post-Gazette's decision under its social media policy not to assign a reporter to a particular story in order to avoid the appearance of bias after she had engaged in public editorial commentary on the issue.  ECF 17, Am. Compl. ¶¶ 15-21.

While newspapers generally are subject to general economic regulations, such as labor laws and anti-discrimination statutes, no court has held that such laws permit governmental review of individual editorial decisions like the one at issue here.  Quite the opposite is true.  In *Associated Press*, the only case cited for this point in the Court's Order, the Supreme Court stressed that nothing in its decision affirming the general jurisdiction of the NLRB over collective bargaining "circumscribes the full freedom and liberty of the petitioner to publish the news as it desires it published or to enforce policies of its own choosing with respect to the editing and rewriting of news for publication, and the petitioner is free at any time to discharge … any editorial employee who fails to comply with the policies it may adopt."  301 U.S. at 133.

In the eight-plus decades since *Associated Press*, courts consistently have made clear that the ability to regulate business operations generally is sharply limited by the First Amendment and

cannot be extended to reach editorial decisions.  *See McDermott v. Ampersand Publ'g LLC*, 593
F.3d 950, 962 (9th Cir. 2010) ("To the extent the publisher's choice of writers affects the
expressive content of its newspaper, the First Amendment protects that choice."); *Nelson v.
McClatchy Newspapers, Inc.*, 936 P.2d 1123, 1131 (Wash. 1997) (en banc) ("Editorial integrity
and credibility are core objectives of editorial control and thus merit protection under the free press
clauses" of the First Amendment; as such, statutes prohibiting discrimination based on employee's
political positions must yield to news organization's First Amendment right to control assignment
of reporters).

Of special relevance here, courts repeatedly have held the First Amendment protects the
primacy of the publisher's right to enforce professional journalistic standards.  *Newspaper Guild
of Greater Philadelphia*, 636 F.2d 550 (D.C. Cir. 1980), is particularly on point, holding labor law
could not be applied to regulate a newspaper's Code of Ethics (based on what is now the SPJ Code)
"to spell out [its] standards of integrity, objectivity, and fairness, and to protect and enhance its
quality and credibility."  *Id.* at 555.  *See also McClatchy Newspapers*, 936 P.2d at 1133 ("Case
law unambiguously allows a news publication to follow a code designed to limit conflicts of
interest which may diminish publication credibility."); *Ampersand Publ'g LLC v. NLRB*, 702 F.3d
51, 56 (D.C. Cir. 2012) (it is the "*publisher*—not a reporter—[that has] absolute authority to shape
a newspaper's content").

This is a controlling question of law.  A "controlling question" is one which, "if erroneous,
would be reversible error on final appeal."  *Katz*, 496 F.2d at 755; *Glover v. Urden*, 2013 WL
3072377, at *2 (W.D. Pa. June 18, 2013).  In this regard, "[a] controlling issue of law does not
have to be dispositive of the case, it only has to be an issue that could materially affect the outcome
of the case."  *Maestri v. Westlake Excavating Co.*, 894 F. Supp. 573, 577 (N.D.N.Y. 1995).  *See
Ahrenholz*, 219 F.3d at 666 ("'question of law' as used in section 1292(b) has reference to a

question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine"). Importantly, however, where "reversal of the district court's order would terminate the action," as it would here, the issue is clearly controlling. *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990); *Consumer Fin. Protection Bureau v. Navient Corp.*, --- F. Supp. 3d --, 2021 WL 772238, at *4-5 (M.D. Pa. Feb. 26, 2021); *United States ex rel. Brown v. Pfizer, Inc.*, 2017 WL 2691927, at *4 (E.D. Pa. June 22, 2017); *Rhoades v. Young Women's Christian Ass'n of Greater Pittsburgh*, 2011 WL 240149, at *2 (W.D. Pa. Jan. 24, 2011); *City of Hialeah Emps.' Retirement Sys. v. Toll Bros., Inc.*, 2009 WL 10684918, at *2 (E.D. Pa. Sept. 21, 2009); *N.J. Protection & Advocacy, Inc. v. N.J. Dep't of Educ.*, 2008 WL 4692345, at *5 (D.N.J. Oct. 8, 2008); *Beazer East, Inc. v. Mead Corp.*, 2006 WL 2927627, at *3 (W.D. Pa. Oct. 12, 2006).

In this case, either the First Amendment permits the use of antidiscrimination law to regulate individual editorial decisions or it does not. Nothing else is at issue here – the Complaint does not allege any other "adverse personnel actions," such as hiring, firing, or a demotion. Rather, it alleges only that the Plaintiff pitched three story ideas and the newspaper declined them. ECF 17, Am. Compl. ¶¶ 20-21. The only way these allegations could present a cognizable claim is if the government had the authority to impose liability for failing to accept these pitches and publish the stories. Yet any such authority would fly in the face of settled First Amendment law, which "provides a publisher absolute discretion to refrain from publishing content," as this Court acknowledged. ECF 37, Mem. Order at 2 (citing *Tornillo*, 418 U.S. at 256-58).

No factual development is necessary to resolve this basic question of law. In *Claybrooks v. American Broadcasting Companies, Inc.*, 898 F. Supp. 2d 986, 993-96 (M.D. Tenn. 2012), the court applied these basic First Amendment rules and dismissed with prejudice a Section 1981 claim alleging that casting decisions for the television programs *The Bachelor* and *The Bachelorette* were motivated by racial discrimination. The court noted that notwithstanding the

5

government's ability to enforce laws of general applicability to media organizations under *Associated Press*, "the Supreme Court has expressly found that the First Amendment can trump the application of antidiscrimination laws to protected speech." *Id*. at 993 & n.9.  The court applied Rule 12(b)(6) and assumed all allegations were true, and held the claims were barred as a matter of law under *Hurley*.  *Id*. at 996.  *See also Telescope Media Grp. v. Lucero*, 936 F.3d 740, 755 (8th Cir. 2019) ("Even antidiscrimination laws, as critically important as they are, must yield to the Constitution.") (citing *Hurley*, 515 U.S. at 579); *id*. at 754 (citing *Tornillo*, 418 U.S. at 256).  This is a paradigmatic example of a controlling issue of pure law.  *Katz*, 496 F.2d at 755 ("The clear case of a controlling question of law [is] one which would result in a reversal of a judgment after final hearing.").

### 2.   The Order Failed to Address the "But-For" Pleading Standard Under Section 1981

The Supreme Court's decision last term in *Comcast* clarified that Section 1981 imposes a more demanding causation standard than is applicable under Title VII of the Civil Rights Act of 1964.  The Court held that Section 1981's text, its history, and precedent reflect that the statute follows the general rule "that a plaintiff seeking redress for a defendant's legal wrong typically must prove but-for causation."  140 S. Ct. at 1014.  The Court rejected the Ninth Circuit's view that, at the pleading stage, a plaintiff need only allege facts showing that race played "some role" in a defendant's conduct.  *Id.* at 1013.  It also explained that "the 'motivating factor' causation test found in Title VII" is inapposite because Section 1981 is a different statute with a distinct history. *Id.* at 1017.

The but-for standard posits a straightforward inquiry.  "The guarantee that each person is entitled to the 'same right … as is enjoyed by white citizens' directs our attention to the

counterfactual—what would have happened if the plaintiff had been white?"  *Id.* at 1015 (quoting 42 U.S.C. § 1981)).

> If the defendant would have responded the same way to the plaintiff even if he had been white, an ordinary speaker of English would say that the plaintiff received the 'same' legal protected right as a white person.  Conversely, if the defendant would have responded differently but for the plaintiff's race, it follows that the plaintiff has not received the same right as a white person.

*Id.*

Importantly, the Court made clear that the same standard applies at all stages of a case. "What a plaintiff must do to satisfy [the essential] elements may increase as a case progresses from complaint to trial, but the legal elements themselves do not change."  *Id.* at 1014.  A plaintiff must advance plausible, non-conclusory allegations of but-for causation in her complaint and ultimately must prove at trial that the defendant took adverse action because of race.  "[A] plaintiff must initially plead and ultimately prove that, but for race, [she] would not have suffered the loss of a legal protected right."  *Id.* at 1019; *see also id.* at 1015 (the test does not "change its stripes … in the face of a motion to dismiss").

The Court's August 17 Order did not address *Comcast* or the but-for standard Section 1981 requires.  Plaintiff did not even attempt to show that her race was the but-for cause of the Post-Gazette's declining her proposed story ideas.  Plaintiff instead urged that she could pursue her Section 1981 claims if "the Court can draw an inference" or "expect that discovery will lead to evidence supporting a causal connection" between her claims of race discrimination and the Post-Gazette's actions refusing to allow her to pursue stories on a subject about which she'd opined on social media, in violation of the newspaper's ethical policies.  *See* ECF 25, Response at 12; *see also id.* at 13 (plaintiff asserting that she "need only point to facts from which an inference can be drawn that her race was one of the but for causes" for her claims).  The Court did not say whether it accepted plaintiff's arguments in denying dismissal, but it is clear that her arguments are plainly

wrong under Section 1981 pleading and proof requirements as they now stand after *Comcast*. Whether or not a plaintiff has satisfied statutory pleading standards is an appropriate question for interlocutory review.  *See, e.g.*, *Reese v. BP Exploration (Alaska) Inc*., 643 F.3d 681, 683-84 (9th Cir. 2011) (granting review under Section 1292(b) to determine whether plaintiff satisfied pleading standards for securities fraud claim); *Mineworkers' Pension Scheme v. First Solar Inc*., 881 F.3d 750, 751-52 (9th Cir. 2018) (per curiam) (same).

### B.    There is a Substantial Basis for Difference of Opinion

#### 1.    First Amendment Issues

A substantial ground for a difference of opinion exists where there is conflicting authority on the issue, or where the issue is particularly difficult and one of first impression in the circuit. *Navient Corp.*, 2021 WL 772238, at *3 ("Questions of first impression can present substantial grounds for difference of opinion."); *Giansante v. Pittsburgh Pub. Schs.*, 2019 WL 2754637, at *2 (W.D. Pa. July 2, 2017) (certification granted where "the issue raised involves a difficult question of law not settled by controlling authority"); *see also Pen Am. Ctr., Inc. v. Trump*, 2020 WL 5836419, at *2 (S.D.N.Y. Oct. 1, 2020); *United States ex rel. Quartararo v. Catholic Health Sys. of Long Island, Inc*., --- F. Supp. 3d ---, 2021 WL 681085, at *8 (E.D.N.Y. Feb. 22, 2021), *appeal docketed*, No. 21-1534 (2d Cir. June 23, 2021).  The decision denying the Post-Gazette's motion to dismiss clearly meets this criterion because it involves difficult questions of law that has not previously been addressed by the Third Circuit.

As set forth above, the controlling principles of First Amendment law have been articulated repeatedly by the Supreme Court and numerous lower courts.  However, even where the constitutional principles are well established, there can be a substantial basis for a difference of opinion for purposes of Section 1292(b) where those rules are being applied in a novel situation, and particularly where the circuit court has not addressed the issue.  *Navient Corp.*, 2021 WL

772238, at *3; *Pen American Ctr.*, 2020 WL 5836419, at *3.  *See Reese*, 643 F.3d at 688 ("when novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions, a novel issue may be certified for interlocutory appeal").  In *Navient Corp.*, for example, the court found substantial grounds for a difference of opinion for the question of whether the equitable tolling doctrine is available to save a federal agency's action from dismissal due to a constitutional defect in the agency's design.  It found the standard was met because it presented an issue of first impression and if the circuit court applied the defandant's proposed standard, "would almost certainly lead to a reversal on appeal and dismissal of this action."  2021 WL 772238, at *4-5.  In *Pen American Center*, 2020 WL 5836419, at *3, the district court certified an appeal on the issue of whether declaratory relief is available against the President in his official capacity for his discretionary actions.  It based its decision on the "special consequence[s]" of the issue raised and the fact that the circuit court had not ruled on the precise issue involved.  *Id*.

Here, the weighty First Amendment issues at stake, combined with a number of decisions that address the intersection of First Amendment and antidiscrimination law, make a compelling case for certification.  For purposes this motion, the issue is not whether the district court agrees with the legal conclusions, but whether there is a legitimate basis for debate based on "an evaluation of the strength of the arguments in opposition to the challenged ruling."  *Id*.  Moreover, the Third Circuit has not ruled on the issue of whether a newspaper's editorial decisions can be the subject of a Section 1981 remedy, although other courts have done so.  *E.g.*, *Claybrooks*, 898 F. Supp. 2d at 996 ("[T]he court must analyze this issue of first impression in light of relevant First Amendment principles.").

### 2.    Section 1981 Issues

Proper application of causation and pleading requirements under Section 1981 also presents an important issue on which the Third Circuit has not yet ruled.  Concerning Plaintiff's

claim of discrimination, the Supreme Court's decision in *Comcast* is recent.   Courts have recognized that *Comcast* represents a heightened, more demanding standard for a plaintiff's complaint to survive Rule 12(b) dismissal.  *See, e.g.*, *Sharifi Takieh v. Banner Health*, 515 F. Supp. 3d 1026, 1045 (D. Ariz. 2021) ("Now, … § 1981's causation standard is more rigorous."), *appeal docketed*, No. 21-15326 (9th Cir. Feb. 24, 2021).  The Third Circuit and this Court have had little opportunity to consider *Comcast*, but in the cases where it has been applied, courts have recognized that the higher causation standard compelled dismissal of plaintiffs' claims.  *See Valentin v. Esperanza Hous. Counseling*, 834 F. App'x 745, 747 (3d Cir. 2021) (per curiam) (affirming 12(b)(6) dismissal where complaint reflected that "race was, at most, one of several factors that led [defendant] to close his case file" for housing assistance); *Rodriguez v. CP Dev., Inc.*, 2021 WL 3037712, at *6 (W.D. Pa. July 19, 2021) (dismissing claims on motion to dismiss for failure to plausibly allege but-for causation); *Ellis v. Bank of N.Y. Mellon Corp.*, 2020 WL 2557902, at *12 (W.D. Pa. May 20, 2020) (dismissing claims on summary judgment, noting that plaintiff must also rebut defendant's stated non-discriminatory reasons for its actions under the but-for causation test of *Comcast*), *aff'd*, 837 F. App'x 940 (3d Cir. 2021).

*Comcast*'s clarification of Section 1981 requirements follows the Supreme Court's similar interpretations in recent years of other employment discrimination statutes.  *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 174, 176 (2009) (ADEA requires but-for causation; it is not sufficient for a plaintiff to show "that age was simply a motivating factor" in the employer's adverse action); *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013) (extending but-for causation requirement to Title VII retaliation claims); *see Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293 (2d Cir. 2021) (noting trend of Supreme Court cases and explaining that *Comcast* compels that the but-for causation standard applies at the pleading stage for ADEA and retaliation claims as well).

These cases represent a significant departure from prior practice in some circuits. *See, e.g.*, *Comcast*, 140 S. Ct. at 1013-14 (noting the Ninth Circuit's more lenient standard allowing Section 1981 claims to survive dismissal if discriminatory intent played "any role" in an employer's action). In other words, there was and has been a substantial difference of opinion among courts about proper application of Section 1981 and requirements to survive a motion to dismiss. This case presents a paradigmatic situation for application of the Section 1981 but-for causation requirement as dictated by *Comcast* and a prime opportunity for the Third Circuit to address the issue.[1]

### C.      Immediate Appeal Will Materially Advance Termination of the Litigation

Immediate appeal of either (or both) of the questions presented would materially advance the termination of the litigation. This factor reflects a "primary purpose of § 1292(b)" – to avoid unnecessary litigation. *Utah v. Kennecott Corp.*, 14 F.3d 1489, 1495 (10th Cir. 1994). As such, it is closely tied to the first factor – whether the motion presents a "controlling question of law." *Pen Am. Ctr.*, 2020 WL 5836419, at *2; *SEC v. Credit Bancorp, Ltd.*, 103 F. Supp. 2d 223, 227 (S.D.N.Y. 2000). However, it is not necessary to show that an immediate appeal, if successful, would necessarily terminate the litigation. It is sufficient if the appeal would narrow or clarify the issues to be resolved in the case. *See Catholic Health Sys. of Long Island*, 2021 WL 681085, at *10. As the Third Circuit has explained, in evaluating these factors, courts look to both legal and

---

[1] The Order also sidestepped the dispositive question of whether general commentary about discrimination in society in general constitutes protected activity for the purpose of a claim of retaliation. As set forth in Defendant's moving memorandum, there is no precedent in the Third Circuit for the proposition that general commentary about racial issues concerning society in general constitutes protected conduct for the purpose of establishing a claim of retaliation under Section 1981. *See* ECF 21, Moving Memorandum at 12-13, discussing *Curay-Cramer v. Ursuline Academy of Wilmington, Delaware, Inc.*, 450 F.3d 130 (3d Cir. 2006). The Court's failure to address this dispositive issue of law makes an interlocutory appeal proper so that the Court and the parties may benefit from appellate guidance on this point.

practical considerations.  *Katz*, 496 F.3d at 755 ("On the practical level, saving of time of the district court and of expense to the litigants was deemed by the sponsors to be a highly relevant factor.").  In a case like this, however, where a decision from the circuit court would clarify the rights of the parties or terminate the litigation entirely, this factor certainly is met.  *Maestri*, 894 F. Supp. at 578.  This is particularly true when a case is in its early stages, when certification is granted before discovery has commenced.  *Pfizer, Inc.*, 2017 WL 2691927, at *4 ("Certification is more likely to materially advance the litigation where the appeal occurs early in the litigation, before extensive discovery has taken place and a trial date has been set.") (citation omitted); *N.J. Protection & Advocacy, Inc.*, 2008 WL 4692345, at *5.

In this case, each issue for which certification is sought involves dispositive questions where reversal of this Court's decision would terminate the litigation.  If the circuit court agrees with the holding in *Claybrooks*, 898 F. Supp. 2d 986, that binding Supreme Court precedent bars claims under Section 1981 that are predicated on a publisher's editorial decisions, there would be nothing left to litigate.  Likewise (or alternatively), if the Third Circuit agrees that the claim of discrimination is deficient under *Comcast* because it fails to allege that discrimination was a but-for cause of plaintiff's alleged Section 1981 injury, that claim should also be dismissed.  An interlocutory appeal would thus materially advance the termination of this litigation.  *See*, *e.g*., *McClatchey v. Associated Press*, 2007 WL 1720080, at *2 (W.D. Pa. June 8, 2007); *Navient Corp.*, 2021 WL 772238, at *4-5; *Catholic Health Sys. of Long Island*, 2021 WL 681085, at *10-11.

It would also satisfy the Third Circuit's admonition that determining what orders satisfy Section 1292(b) should be based on practical considerations in order to avoid "possibly wasted trial time and litigation expense."  *Katz*, 496 F.2d at 756.  This is "the precise situation that § 1292(b) was designed to avoid."  *Beazer East, Inc. v. Mead Corp*., 2006 WL 2927627, at *3 (W.D. Pa. Oct. 12, 2006).  Certification "addresses certain fundamental concerns of the draftsmen

of § 1292(b), including 'a wasted protracted trial if it could early be determined that there might be no liability,' such as in 'cases in which a long trial results from a pretrial order erroneously overruling a defense going to the right to maintain the action.'" *Navient Corp.*, 2021 WL 772238, at \*5 (quoting *Katz*, 496 F.2d at 754). In this case, the Court should certify this appeal because Third Circuit review will "either lead to dismissal of the action in its entirety or would allow the entire case to go forward." *Id.*

## II.   THE COURT SHOULD STAY DISCOVERY PENDING RESOLUTION OF ANY INTERLOCUTORY APPEAL

This Court should stay the discovery schedule set forth in its Case Management Order (ECF 38) pending a decision on this motion, and, if accepted by the circuit court, any resulting appeal. Such a stay is not automatic. Section 1292(b) provides that "application for an appeal shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order." 28 U.S.C. § 1292(b). Nevertheless, "courts have routinely granted a stay where they have certified an order for interlocutory appeal." *Navient Corp.*, 2021 WL 772238, at \*8.[2] This is because the underlying purpose of Section 1292(b) is to avoid unnecessary litigation and expense to the litigants. *Katz*, 496 F.2d at 755-56.

This Court has ample authority to put off discovery to avoid the unnecessary expenditure of litigants' and its own resources. "[U]pon a showing of good cause a district court has considerable discretion to stay discovery" pursuant to Federal Rule of Civil Procedure 26(c). *See*

---

[2] *See e.g.*, *Pfizer, Inc*., 2017 WL 2691927, at \*5 (finding that a "stay is appropriate in this action in order to facilitate" the objectives of § 1292(b) and to "eliminate complex issues and make discovery easier and less costly for the parties"). *See also Catholic Health Sys. of Long Island*, 2021 WL 681085, at \*10; *Pen Am. Ctr.*, 2020 WL 5836419, at \*4; *Sayles v. Allstate Ins. Co*., 2017 WL 2985402, at \*3 (M.D. Pa. July 13, 2017); *Lupian v. Joseph Cory Holdings, LLC*, 2017 WL 1483313, at \*3 (D.N.J. Apr. 24, 2017); *Toll Bros., Inc.*, 2009 WL 10684918, at \*2; *N.J. Protection & Advocacy, Inc.*, 2008 WL 4692345, at \*5; *Maestri*, 894 F. Supp. at 579; *Pub. Int. Research Grp. of N.J., Inc. v. Hercules, Inc*., 830 F. Supp. 1549, 1559 (D.N.J. 1993).

*Ema Fin., LLC v. Vystar Corp.*, 2020 WL 4808650, at *2 (S.D.N.Y. Aug. 18, 2020).  Rule 26(d) allows a court to control the sequence and timing of discovery, particularly where a decision on a preliminary matter may decide the entire case.  Good cause to stay discovery upon certification clearly exists where "resolution of this legal question will determine whether this action can proceed, or must be dismissed, in its entirety." *Navient Corp.*, 2021 WL 772238, at *8.  Where the appellate court's decision will determine ability of a case to proceed, "there is little value in expending significant resources by the court and litigants, particularly where the purpose of § 1292(b) is to avoid 'a wasted protracted trial if it could early be determined that there might be no liability.'" *Id.* (quoting *Katz*, 496 F.2d at 754).

Good cause for a stay has been shown in this case for all the the legal and practical reasons already discussed.  But grounds for a stay are even more compelling where discovery inevitably will raise significant constitutional issues which could be be narrowed or be rendered entirely unnecessary. *Pen Am. Ctr.*, 2020 WL 5836419, at *4.  In this case, discovery would no doubt seek to probe the editorial processes of the Post-Gazette, which inevitably would lead to substantial motions practice.  This prospect could be avoided altogether if dispositive issues can be decided on appeal without discovery.  Under these circumstances, a stay of discovery is warranted.

## CONCLUSION

For the foregoing reasons, this Court should certify an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) and stay further proceedings pending consideration of this motion and any subsequent appeal.


Dated: August 30, 2021

Respectfully submitted,


/s/ Robert Corn-Revere

Robert Corn-Revere (*pro hac vice*)
Courtney T. DeThomas (*pro hac vice*)
**Davis Wright Tremaine LLP**
1301 K Street, NW, Suite 500 East
Washington, D.C. 20005
Telephone: (202) 973-4200
Facsimile: (202) 973-4499
bobcornrevere@dwt.com
courtneydethomas@dwt.com

James Grant (*pro hac vice*)
**Davis Wright Tremaine LLP**
920 5th Avenue, Suite 3300
Seattle, WA 98104
Telephone: (206) 757-8096
JimGrant@dwt.com

Patrick K. Cavanaugh
Zachary Gordon
**Del Sole Cavanaugh Stroyd LLC**
Three PPG Place, Suite 600
Pittsburgh, PA 15222
(412) 261-2395
pcavanaugh@dscslaw.com
zgordon@dscslaw.com