# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| _____ | ) | |
| ALEXIS D. JOHNSON | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:20-cv-885-NR |
| | ) | |
| PG PUBLISHING COMPANY, t/d/b/a | ) | |
| PITTSBURGH POST GAZETTE | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO CERTIFY THE COURT'S
<u>AUGUST 17 ORDER FOR INTERLOCUTORY APPEAL AND TO STAY DISCOVERY</u>**

## <u>TABLE OF CONTENTS</u>

I.   PLAINTIFF MISSTATES SECTION 1292(B) STANDARDS CONCERNING
     WHETHER THERE IS A SUBSTANTIAL BASIS FOR DIFFERENCE OF
     OPINION. .....................................................................................................................2

II.  SUBSTANTIAL GROUNDS EXIST FOR INTERLOCUTORY APPEAL OF
     SECION 1981 CAUSATION AND PLEADING REQUIREMENTS. .............................3

III. SUBSTANTIAL GROUNDS EXIST FOR INTERLOCUTORY APPEAL ON
     FIRST AMENDMENT PROHIBITIONS OF CLAIMS CHALLENGING
     EDITORIAL DECISIONS. ................................................................................................5

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Bostock v. Clayton County, Georgia*,
  140 S.Ct. 1731 (2020)..................................................................................................4

*Comcast Corp. v. National Association of African American-Owned Media*,
  140 S.Ct. 1009 (2020).................................................................................1, 3, 4, 5

*Consumer Fin. Protection Bureau v. Navient Corp., et. al.*,
  2021 WL772238 (M.D. Pa. Feb. 26, 2021) ...............................................................2

*Couch v. Telescope, Inc.*,
  611 F.3d 629 (9th Cir. 2010) ......................................................................................2

*Elrod v. Burns*,
  427 U.S. 347 (1976).....................................................................................................9

*F.T.C. v. Wyndham Worldwide Corp.*,
  10 F. Supp. 3d 602 (D.N.J. 2014), *aff'd,* 799 F.3d 236 (3d Cir. 2015)....................8

*Glover v. Udren*,
  2011 WL 3290238 (W.D. Pa. June 30, 2011)............................................................2

*Gross v. FBL Financial Servs., Inc.*,
  557 U.S. 167 (2009).....................................................................................................3

*Hurley v. Irish-Am. Gay, Lesbian, & Bisexual Grp. of Boston*,
  515 U.S. 557 (1995).....................................................................................................5

*In re Asbestos School Litigation*,
  46 F.3d 1284 (3d Cir. 1994) (Alito, J.) ......................................................................9

*In re Flor*,
  79 F.3d 281 (2d Cir. 1996)..........................................................................................2

*McDermott v. Ampersand Publ'g LLC*,
  593 F.3d 950 (9th Cir. 2010) ......................................................................................8

*Miller v. CIGNA Corp.*,
  47 F.3d 586 (3d Cir. 1995)..........................................................................................4

*Newspaper Guild of Greater Phila., Local 10 v. NLRB*,
  636 F.2d 550 (D.C. Cir. 1980) .............................................................................6, 8

*Pen Ame. Ctr., Inc. v. Trump*,
    2020 WL 5836419 (S.D.N.Y. Oct 1, 2020) ....................................................................3, 8

*Robinson v. City of Philadelphia*,
    491 Fed. Appx. 295 (3d Cir. 2012) ...............................................................................4

*Sharifi Takieh v. Banner Health*,
    515 F. Supp. 3d 1026 (D. Ariz. 2021) ..........................................................................5

*Swint v. Chambers Cty. Comm'n*,
    514 U.S. 35 (1995) .........................................................................................................2

*Univ. of Texas. Sw. Med. Cntr. v. Nassar*,
    570 U.S. 338 ...................................................................................................................3

*Valentin v. Esperanza Hous. Counseling*,
    834 F. App'x 745 (3d. Cir. 2021) .................................................................................5

**State Cases**

*Nelson v. McClatchy Newspapers, Inc.*,
    936 P.2d 1123 (Wash. 1997)....................................................................................6, 8

**Federal Statutes**

28 U.S.C. § 1292(b) .............................................................................................. *passim*

42 U.S.C. § 1981.................................................................................................... *passim*

Age Discrimination in Employment Act of 1967 ........................................................3

Civil Rights Act of 1964 .........................................................................................3, 4, 5

**Constitutional Provisions**

First Amendment .................................................................................................. *passim*

**Other Authorities**

16 C. Wright & A. Miller, Fᴇᴅ. Pʀᴀᴄ. & Pʀᴏᴄᴇᴅᴜʀᴇ § 3929 (2d ed. 1987) ...............................2

**INTRODUCTION**

The Post-Gazette's Motion seeking certification for interlocutory appeal under 28 U.S.C. § 1292(b) (ECF 42; "Motion"), set forth two central legal issues presented by the Court's August 17, 2021 Order (ECF 37): (1) Whether the First Amendment bars liability on a reporter-plaintiff's claim under 42 U.S.C. § 1981 challenging a publisher-defendant's editorial decision not to assign her to a story when she had expressed personal opinions about the story on social media; and (2) Whether the reporter's Section 1981 claim can survive when her complaint offers no factual allegations that the publisher's action was "because of" her race, and, to the contrary, admits the publisher applied the same policy in the same way to other staff members, regardless of race.

Plaintiff's Opposition does not contest that two of the requirements for certification under Section 1292(b) are met here. (ECF 46.; "Opp.") Specifically, Plaintiff does not dispute that the issues presented by the Motion are controlling questions of law or that an immediate appeal of the Court's Order would materially advance termination of the litigation. *See* 28 U.S.C. § 1292(b); And rightly so. Claims barred by the First Amendment cannot proceed; indeed, even Plaintiff admits that "the First Amendment precludes government regulation of" "a decision to publish or not publish a story." Opp. at 14. A Section 1981 complaint that contains no plausible allegations of "but-for" causation cannot survive a motion to dismiss under *Comcast Corp. v. National Association of African American-Owned Media*, 140 S.Ct. 1009, 1015, 1019 (2020).

Instead, Plaintiff's sole basis for opposing certification is to claim there is no "substantial ground for difference of opinion" on these legal issues. Opp. at 4. But Plaintiff's arguments actually demonstrate the grounds for differences and therefore underscore the need for interlocutory appeal.

1

**ARGUMENT**

I.    **PLAINTIFF MISSTATES SECTION 1292(B) STANDARDS CONCERNING WHETHER THERE IS A SUBSTANTIAL BASIS FOR DIFFERENCE OF OPINION.**

From the outset and throughout her Opposition, Plaintiff insists that a legal issue may be certified for interlocutory appeal only if there is a split of circuit courts.  Opp. at 4, 5.  There is no such requirement,[1] and it would be nonsensical to make this a prerequisite of Section 1292(b) certification since the statute allows for discretion in certifying orders.  *Swint v. Chambers Cty. Comm'n*, 514 U.S. 35, 47 (1995) ("district courts [have] first line discretion to allow interlocutory appeals"); *see* 16 C. Wright & A. Miller, FED. PRAC. & PROCEDURE § 3929 (2d ed. 1987) (discussing flexible approach of appellate courts towards interlocutory appeals).

To the contrary, substantial grounds for difference of opinion can be established by showing "an absence of controlling law on the issue or 'conflicting and contradictory opinions.'" *Glover v. Udren*, 2011 WL 3290238, at *2 (W.D. Pa. June 30, 2011).  A substantial ground for a difference of opinion also exists when there is conflicting authority on the issue or when a difficult issue is one of first impression in the circuit.  *Consumer Fin. Protection Bureau v. Navient Corp., et. al.,* 2021 WL772238, at * 3 (M.D. Pa. Feb. 26, 2021).  Section 1292(b) certification is uniquely appropriate in circumstances such as this, given the significant First Amendment principles at

---

[1] The cases Plaintiff cites do not stand for this proposition.  For instance, Plaintiff misquotes *Couch v. Telescope, Inc.*, 611 F.3d 629, 633 (9th Cir. 2010).  Opp. at 4.  *Couch* did not state that a circuit split was necessary to justify Section 1292(b) certification; the portion of the decision Plaintiff cites merely described in general instances when courts have found a substantial ground for difference of opinion, *i.e.,* "where 'the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented."  *Couch,* 611 F.3d at 633 (quoting 3 FED. PROC., LAWYERS ED. § 3:212 (2010)).  *In re Flor*, 79 F.3d 281 (2d Cir. 1996), which Plaintiff also cites, Opp. at 5, is inapposite since it concerned the "rare instances" where an appellate court may hear an interlocutory appeal "in the absence of a § 1292(b) certification."  *Id.* at 284 (debtors conceded they had "failed to request certification by the district judge").

2

stake. *See Pen Ame. Ctr., Inc. v. Trump*, 2020 WL 5836419, at *2 (S.D.N.Y. Oct 1, 2020) (Section 1292(b) interlocutory appeal appropriate given the "special consequence[s]" of the constitutional issue raised, which the circuit court had not addressed).

Plaintiff's argument that there must be a circuit split on an issue before Section 1292(b) certification is allowed would mean that plainly unconstitutional claims would be immunized from interlocutory appeal simply because others have not advanced the same spurious claims before. There is no such requirement for Section 1292(b) certification.

## II.     SUBSTANTIAL GROUNDS EXIST FOR INTERLOCUTORY APPEAL OF SECION 1981 CAUSATION AND PLEADING REQUIREMENTS.

Plaintiff admits that for many years courts have disagreed about the causation standard for Section 1981 claims. Opp. at 7. Plaintiff contends, however, that since the Supreme Court's decision in *Comcast* last year, "the issue of what standard applies has been quite uncontroversial." Opp. at 7. That should be right. The Court in *Comcast* was clear that, under the plain terms of Section 1981 and "textbook tort law," "a plaintiff must demonstrate that, but for the defendant's unlawful conduct, its alleged injury would not have occurred." 140 S.Ct. at 1014. The Court went on to put the test more simply: "[W]hat would have happened if the plaintiff had been white?" and "If the defendant would have responded the same way to the plaintiff even if he had been white," there can be no but-for causation and no Section 1981 claim. *Id.* at 1015. The requirement that an employer took adverse action "because of" race means that race "was the 'reason' that the employer decided to act" and thus the "'but-for' cause of the employer's adverse decision." *Gross v. FBL Financial Servs., Inc.*, 557 U.S. 167, 176 (2009) (ADEA provision imposing liability for discrimination "because of" age requires but-for causation); *accord Univ. of Texas. Sw. Med. Cntr. v. Nassar*, 570 U.S. 338, 350 (same for retaliation claims under Title VII). And, as noted before, the *Comcast* Court also was explicit that the same standard – that the plaintiff must show that race

discrimination was the but-for cause of an employer's action – applies at all stages of a case, including to survive a motion to dismiss. *Comcast*, 140 S.Ct. at 1019 ("[A] plaintiff must initially plead and ultimately prove that, but for race, [she] would not have suffered the loss of a legally protected right.").

Yet, after claiming that the heightened Section 1981 causation and pleading requirements announced in *Comcast* are "uncontroversial," Plaintiff argues that they did not change the law at all. Opp. at 7. Citing *Bostock v. Clayton County, Georgia*, 140 S.Ct. 1731 (2020), Plaintiff contends that the but-for requirement under Section 1981 "is a sweeping standard" allowing that "[s]o long as the plaintiff's race … was *one* but-for cause of the employer's decision, that is enough to trigger the law." Opp. at 8 (emphasis added). The Court in *Bostock* said no such thing,[2] and, in any event, that case concerned Title VII. The Supreme Court's decision in *Comcast* expressly stated that causation standards for Title VII do not apply to Section 1981. *Comcast*, 140 S.Ct. at 1017 ("So we have two statutes with two distinct histories, and not a shred of evidence that Congress meant them to incorporate the same causation standard."). *Comcast* rejected the view that Title VII's lesser causation standard – *i.e.*, that a plaintiff need only show race discrimination was "a motivating factor" for an employer's action – applies to Section 1981 claims. *Id.* at 1017-18. But Plaintiff tries to resurrect the rejected standard now.[3]

---

[2] *Bostock* is the Court's decision, authored by Justice Gorsuch, holding that discrimination based on sexual orientation falls within the protections of Title VII. 140 S.Ct at 1754 ("An employer who fires an individual merely for being gay or transgender defies the law.").

[3] Plaintiff contends "[t]he Third Circuit has applied the 'but for' standard to 1981 cases" and held that it "does not mean that the employee's protected classification need be the sole cause of the challenged decision." Opp. at 8. Plaintiff goes on to cite cases that have nothing to do with Section 1981 claims. *See, e.g.*, *Robinson v. City of Philadelphia*, 491 Fed. Appx. 295, 299 (3d Cir. 2012) (ADEA); *Miller v. CIGNA Corp.*, 47 F.3d 586 (3d Cir. 1995) (ADEA). And, in any event, the issue here is whether Plaintiff has plausibly alleged that race discrimination was *the reason*, the *but-for cause* of its decision to apply its social media policy to Plaintiff and all other journalists who breached the policy, regardless of their race.

Plaintiff's arguments thus demonstrate the prospect for difference of opinion on the central legal issue of Section 1981 causation. Courts have recognized that *Comcast* imposes higher pleading requirements, different from the standards for status-based discrimination claims under Title VII. *See, e.g.*, *Sharifi Takieh v. Banner Health*, 515 F. Supp. 3d 1026, 1045 (D. Ariz. 2021). The Third Circuit has not had opportunity to consider the increased standards after *Comcast* but has applied the case to dismiss claims of a plaintiff whose complaint reflected that "race was, at most, one of several factors" for a defendant's actions. *Valentin v. Esperanza Hous. Counseling*, 834 F. App'x 745, 747 (3d. Cir. 2021). Plaintiff says, however, that case law under Title VII and before *Comcast* can be taken to mean that a plaintiff need only allege that race was ***one cause*** of an employer's action, even if it was not ***the*** but-for reason for the employer's action.

This is a substantial ground for difference of opinion, making Section 1292(b) certification appropriate. Additionally, it is not surprising that there is no extant split among the circuit courts on this issue (and as discussed above, none is required). The Supreme Court decided *Comcast* just last year and no one in any reported case has raised an argument such as Plaintiff advances here. But that should not preclude interlocutory appeal. Quite the contrary, Plaintiff's arguments to avoid *Comcast* underscore the need for review.

### III.   SUBSTANTIAL GROUNDS EXIST FOR INTERLOCUTORY APPEAL ON FIRST AMENDMENT PROHIBITIONS OF CLAIMS CHALLENGING EDITORIAL DECISIONS.

Plaintiff's Opposition similarly demonstrates substantial grounds for difference of opinion concerning First Amendment protections applicable in this case. The Post-Gazette's Motion explained the overarching principle that the First Amendment bars challenges to a publisher's editorial decisions. "The Speech Clause has no more certain antithesis" than to allow government to intrude on editorial decisions, even where the state's asserted goal is to enforce anti-discrimination statutes. *Hurley v. Irish-Am. Gay, Lesbian, & Bisexual Grp. of Boston*, 515 U.S.

557, 578-79 (1995). "[P]rotection of the editorial integrity of a newspaper lies at the core of publishing control" and is "within the First Amendment's zone of protection and therefore entitled to special consideration." *Newspaper Guild of Greater Phila., Local 10 v. NLRB*, 636 F.2d 550, 560 (D.C. Cir. 1980). And, protected editorial discretion includes setting policies to preserve objectivity in reporting. The First Amendment "unambiguously allows a news publication to follow a code designed to limit conflicts of interest which may diminish publication credibility." *Nelson v. McClatchy Newspapers, Inc.*, 936 P.2d 1123, 1133 (Wash. 1997).

Plaintiff admits that "the First Amendment precludes government regulation of" decisions whether "to publish or not publish a story." Opp. at 14. Plaintiff goes on to state that the Post-Gazette's "right to establish editorial guidelines … is undisputed." *Id.* at 13 n.2. Further, Plaintiff "does not claim Defendant violated Section 1981 because it turned down [her] story idea[s]." *Id.* at 13. And, Plaintiff "does not challenge Defendant's policy" that reporters who express opinions about a story in social media may not be allowed to cover the story. *Id.* at 13 n.2.

Given these admissions, it should be apparent that the Post-Gazette's actions toward Plaintiff are protected editorial decisions that cannot form the basis of a Section 1981 claim. But Plaintiff insists the Post-Gazette's conduct in applying its social media policy was merely a "personnel decision … regulated by labor and anti-discrimination statutes." Opp. at 13. Here, Plaintiff's Opposition misrepresents and misstates the allegations of her own complaint. The Opposition asserts that the issue is whether the Post-Gazette "can assign stories based on race" and maintains that "there is not a substantial basis for difference of opinion" because no "court has ever held that a newspaper can assign certain stories to white reports and other stories to black reporters." *Id.* Plaintiff's complaint contains no such allegation. The Post-Gazette did no such thing. In fact, Plaintiff's complaint acknowledges that Post-Gazette editors informed her that they

6

were applying the newspaper's social media policy "that commenting on a matter in the news would preclude a reporter or journalist from thereafter covering that story."  Am. Compl. ¶ 22 (ECF 17); *see also id.* ¶ 19 (editors told Plaintiff that she would not be assigned to cover the ongoing protests because of her tweet opining on the protests).  Plaintiff also admits that 80 other journalists, including white journalists, were treated the same way, and the Post-Gazette applied the social medial policy uniformly without regard to race.  *Id.* at ¶¶ 28-29.

Plaintiff's Opposition makes other baseless accusations entirely divorced from the allegations in the complaint.  Plaintiff says the Post-Gazette "admits the protected conduct caused the adverse action," and has admitted its actions toward Plaintiff were "because [she] opposed racism."  Opp. at 5, 9 (emphasis omitted).  This is absurd.  The Post-Gazette decided not to assign Plaintiff to cover one story – the George Floyd protests – because she had publicly opined about the story.  The substance of Plaintiff's opinions were irrelevant.  So too, Plaintiff's assertion in the Opposition that the Post-Gazette made a "personnel decision to create a racially segregated news room," Opp. at 11, is disingenuous, and, again, is not based on the facts or any allegations in the complaint.  Plaintiff's effort now to float new, unsupported accusations should not be countenanced, and in any event are irrelevant to the legal questions deserving certification under Section 1292(b).  Plaintiff's claims attack the Post-Gazette's editorial judgment in applying its ethical policies; this is apparent on the face of the complaint.

Plaintiff contends, however, that her claims are permissible based on cases holding that newspapers do not have blanket immunity from labor and anti-discrimination laws.  Opp. at 12 (citing *Associated Press v. Labor Board*, 301 U.S. 103 (1937), and *Hausch v. Donrey of Nevada, Inc.*, 833 F. Supp. 822 (D. Nev. 1993)).  The Post-Gazette has not disputed that publishers are subject to general economic laws and regulations; that is not the issue here.

The arguments advanced by Plaintiff and the Post-Gazette, respectively, along with the Court's August 17 Order, amply illustrate the substantial grounds for difference of opinion as to the First Amendment issue at the heart of this case.  Plaintiff asserts that she may pursue claims based on her assertions that publishers are not immune from general employment laws and her characterizations of the Post-Gazette's actions as "personnel decisions."  *See* Opp. at 12 (citing cases concerning general application of labor and employment discrimination laws to newspapers, *Associated Press v. Labor Board*, 301 U.S. 103 (1937), *Passaic Daily News v. NLRB*, 736 F.2d 1543 (D.C. Cir. 1984), and *Hausch v. Donrey of Nevada, Inc.*, 833 F. Supp. 822 (D. Nev. 1993)). The Post-Gazette believes the case is governed by First Amendment law that specifically protects publishers' editorial decisions, including ethical rules and decisions about story choices and reporter assignments.  *See, e.g.*, *Newspaper Guild of Greater Phila.*, 636 F.2d at 560; *McDermott v. Ampersand Publ'g LLC*, 593 F.3d 950, 962 (9th Cir. 2010); *Nelson*, 936 P.2d at 1131.

Section 1292(b) certification for interlocutory appeal is proper because the First Amendment issue here presents a matter of first impression for the Third Circuit.  *See F.T.C. v. Wyndham Worldwide Corp.*, 10 F. Supp. 3d 602, 634-36 (D.N.J. 2014) (certifying for appeal an issue of first impression regarding application of the FTC Act notwithstanding the government's objections that the court had applied "well-established legal standards," because "reasonable jurists may differ over the court's resolution" of the issues), *aff'd*, 799 F.3d 236 (3d Cir. 2015).

Moreover, certification of an appeal now is important because First Amendment interests weigh in the balance.  When a constitutional right is at stake, this presents a "special consequence" supporting Section 1292(b) certification.  *Pen Ame. Ctr.*, 2020 WL 5836419, at *2.  Protection of a publisher's editorial decisions are "entitled to special consideration."  *Newspaper Guild of Greater Phila.*, 636 F.2d at 560.  As the Third Circuit has recognized, interlocutory appellate

review may be especially warranted in the context of "First Amendment freedoms." *In re Asbestos School Litigation*, 46 F.3d 1284, 1295 (3d Cir. 1994) (Alito, J.) (granting mandamus relief where district court's ruling infringed party's associational rights).  Among the most basic of First Amendment principles is that "[t]he loss of First Amendment Freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

## CONCLUSION

The issue presented by the Post-Gazettes' Motion is whether interlocutory appeal is appropriate because this case presents fundamental legal questions under the First Amendment and Section 1981 that the Third Circuit has not addressed, the resolution of which would advance ultimate resolution of this case.  28 U.S.C. § 1292(b).  Plaintiff's Opposition is rife with baseless accusations that have no basis in fact, let alone in allegations in the complaint, and which do not address the legal issues that call for immediate appellate review.  The Court should disregard Plaintiff's accusations now (albeit not in the complaint) that the Post-Gazette assigned stories based on the reporters' race, or sought to have a "segregated newsroom," or limited reporters' assignments if they "opposed race discrimination."  The Post-Gazette did none of this.  Plaintiff's complaint does not say otherwise.  Rather, the Court's analysis must focus on the legal issues that govern a decision to permit interlocutory appeal. On this record, given the importance of the issues, the lack of Third Circuit precedent, and the threat to First Amendment rights, the Post-Gazette respectfully requests the Court to grant is motion and certify this case for Section 1292(b) appeal.

Dated:  September 10, 2021

Respectfully submitted,

*/s/ Courtney T. DeThomas*

Robert Corn-Revere (*pro hac vice*)
Courtney T. DeThomas (*pro hac vice*)
**Davis Wright Tremaine LLP**

1301 K Street, NW, Suite 500 East
Washington, D.C. 20005
Telephone: (202) 973-4200
Facsimile: (202) 973-4499
bobcornrevere@dwt.com
courtneydethomas@dwt.com

James Grant (*pro hac vice*)
**Davis Wright Tremaine LLP**
920 5th Avenue, Suite 3300
Seattle, WA 98104
Telephone: (206) 757-8096
JimGrant@dwt.com

Patrick K. Cavanaugh
Zachary Gordon
**Del Sole Cavanaugh Stroyd LLC**
Three PPG Place, Suite 600
Pittsburgh, PA 15222
(412) 261-2395
pcavanaugh@dscslaw.com
zgordon@dscslaw.com

10