**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| ALEXIS D. JOHNSON, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:20-cv-885-NR |
| | ) | |
| PG PUBLISHING COMPANY, t/d/b/a PITTSBURGH POST GAZETTE, | ) ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO COMPEL DISCOVERY RESPONSES**

## I.   INTRODUCTION

Pursuant to the Court's Order of January 10, 2022 (ECF 51) and Fed. R. Civ. P. 37, Defendant PG Publishing Co. (the "Post-Gazette") moves the Court for an order to address Plaintiff Alexis Johnson's inadequate production of documents and improper withholding of certain documents on purported claims of privilege. More specifically, the Post-Gazette requests that the Court order Plaintiff to:

(1) Make a complete production of documents in response to the Post-Gazette's requests, including specifically all text messages, emails, social media posts, and other communications between Ms. Johnson and any third parties about her employment with the Post-Gazette and the circumstances relating to her claim; and

(2) Provide Documents AJPriv_000005 through 000008, which Plaintiff has withheld on putative claims of privilege, for *in camera* review to allow the Court to assess whether these materials concern allegations that were added in Plaintiff's Amended Complaint (ECF 17) and/or were improperly withheld.

## II.   BACKGROUND

### A.   Persistent Difficulties to Obtain Complete Document Production from Plaintiff.

For over three months, the Post-Gazette has tried to get a complete production of documents from Plaintiff. Counsel for the Post-Gazette has raised and repeated concerns; held multiple meet-and-confer calls with Plaintiff's counsel; received various assurances; and even now, after the Court's original discovery cutoff date has passed, Plaintiff's counsel has indicated that significant sources of documents (*e.g.*, Ms. Johnson's text messages and social media posts) have not been thoroughly searched or produced.

This case concerns an editorial decision by the Post-Gazette on June 1, 2020 not to assign Ms. Johnson to stories concerning the protests in Pittsburgh about the killing of George Floyd after Plaintiff posted a tweet expressing her personal view about the protests. The Post-Gazette propounded its first set of discovery requests to Plaintiff on September 27, 2021, which included

1

requests for production of documents. *See* Declaration of James C. Grant ("Grant Decl."), Ex. A. The Post-Gazette sought all documents about Ms. Johnson's tweet, the Post-Gazette's actions, communications with members of the Newspaper Guild of Pittsburgh, Local 38061 (the "Guild"),[1] Ms. Johnson's many interviews and statements to the media, and other documents concerning her employment with the Post-Gazette and the incident. The Post-Gazette's requests specifically sought communications to or from Ms. Johnson with third parties in all media, *i.e.*, whether in emails, text messages, social media posts or messages, or in other forms. *See id.* at 1-2, 4-5.

Plaintiff's October 27, 2021 response to the Post-Gazette's requests raised general objections (though no objections to specific document requests) and was ambiguous in many respects. *See* Grant Decl. Ex. B. Counsel for the Post-Gazette raised these issues at the time, noting that Plaintiff's document production appeared seriously deficient. *See id.* Ex. C. Plaintiff produced only 10 pages of documents, and even including documents provided as part of initial disclosures, the sum total of Plaintiff's production was 23 pages. *See id.* at 1, 2, 4 (in comparison, the Post-Gazette had produced approximately 3,300 pages of materials in response to Plaintiff's requests). Counsel for the Post-Gazette raised, in particular, that Plaintiff's response did not include any direct communications she had with anyone and indicating that she was withholding all communications with persons associated with the Guild on the basis of an asserted "union representative-employee privilege." over those communications. *Id*. at 2.

Counsel for the Post-Gazette requested a meet-and-confer call to address the deficiencies of Plaintiff's production. The parties' counsel talked on November 2, 2021. *See* Grant Decl. Ex. D (November 3, 2021 letter to Plaintiff's counsel). Plaintiff's counsel made assurances that he

---

[1] The Guild took an active role in the issue concerning Ms. Johnson, encouraging its members (other Post-Gazette journalists) to post Ms. Johnson's tweet on their social media accounts and issuing press releases and giving public statements critical of the Post-Gazette.

2

had conducted a full electronic search of Ms. Johnson's computer, cell phone, text messages, emails, and social media accounts and said there were no other responsive documents to produce except for a handful of communications with a "union steward" or representative. *Id.* at 1. Plaintiff's counsel said he was considering whether to persist with is objection asserting a union-employee privilege and would produce the few remaining documents within a week. The Post-Gazette's counsel also raised again the concern that Plaintiff's production did not contain any messages or communications between Ms. Johnson and third parties regarding her situation with the Post-Gazette following her May 31, 2020 tweet. *Id.* at 1. Plaintiff's counsel asserted that Ms. Johnson did not communicate about her situation with any third parties and there was nothing else to produce (except for the few communications with Guild representatives). *Id.*

Plaintiff made a supplemental production on November 9, 2021. This production included some 400 text messages between Ms. Johnson and two Guild representatives (Mike Fuoco and Jon Silver) from the period June 6-12, 2020. Despite that the situation concerning Ms. Johnson's tweet began on June 1, 2020, and the Guild representatives were involved from the outset and for several months thereafter, Plaintiff produced no other texts except for three short exchanges between Ms. Johnson and Mr. Silver on June 2-4, 2020, and one text from Mr. Fuoco on June 2, 2020. The supplemental production also contained almost no texts, emails, posts, or other communications from or to Ms. Johnson and any other third parties.

Counsel for the Post-Gazette raised these apparent omissions, again, in early December 2021. *See* Grant Dec. Ex. E. Plaintiff did not respond. The Post-Gazette pressed Plaintiff's counsel concerning the document production deficiencies because Ms. Johnson's deposition was scheduled for December 9, 2021, and because of the January 7, 2022 discovery cutoff set by the

3

Court (ECF 38). The Post-Gazette proceeded with Ms. Johnson's deposition on December 9th with the documents that been produced thus far.

The Post-Gazette had additionally subpoenaed documents from the Guild, and on December 17, 2021, the Guild provided a supplemental production of several hundred text messages between Ms. Johnson and Messrs. Fuoco and Silver that were not included in Plaintiff's production. These include texts from July through September 2020 about Ms. Johnson's situation and the Guild's continuing campaign against the Post-Gazette, and communications about a comment rumored to have been made by Post-Gazette managing editor Karen Kane that led to amended allegations in the complaint (discussed below). With this further evidence that prior representations about Plaintiff's supposedly complete document production were not accurate, counsel for the Post-Gazette wrote Plaintiff's counsel again. *See* Grant Decl. Ex. F. In addition to insisting Ms. Johnson should have produced the text messages with the two representatives that the Guild provided, counsel wrote: "As it is now obvious that Ms. Johnson texted hundreds of times with just two people about her situation with the Post-Gazette and the Guild's campaign afterward, it follows that she likely texted with many other people many times about the same subjects." *Id.* at 1.

Indeed, the few texts, posts, and comments of Ms. Johnson to third parties that have been produced are revealing and contradict her claims. Contrary to allegations that she was pulled off of coverage of the George Floyd protests, Ms. Johnson stated to others that she was not assigned to protest coverage in the first place. When she was asked to cover George Floyd's funeral, Ms. Johnson commented on social media that this was "the opportunity of a lifetime," although she declined the assignment at the behest of the Guild. As she was being recruited for other job opportunities, in Twitter direct messages with a contact at a prospective employer who expressed

4

sympathies about "you being taken off the blm breaking coverage," Ms. Johnson responded: "LOL. It's no biggie. It was very coincidental and actually may have been divine timing."

Counsel for the Post-Gazette asked for another meet-and-confer, and the parties' counsel spoke on December 30, 2021. *See* Grant Decl. Ex. G. Given the repeatedly confirmed deficiencies of Plaintiff's document production, counsel for the Post-Gazette proposed taking an image of the data on Ms. Johnson's cell phone to allow the Post-Gazette to search for responsive materials. Plaintiff's counsel said he was amenable to this approach. *See id.* at 1. When a week passed with no further response from Plaintiff, the Post-Gazette's counsel wrote again explaining arrangements they had made for a third-party vendor to image the phone. Grant Decl. Ex. H.

Plaintiff's counsel responded that he had a vendor image the phone on January 7, 2022, and asked for a "suggested set of search terms we can agree upon." Grant Decl. Ex. I. These representations raise concerns, again, about prior commitments of Plaintiff's counsel that Ms. Johnson's computer, phone, and other devices were fully searched before.

Additionally, on January 11, 2022, Plaintiff's counsel emailed a small collection of what he described as "Ms. Johnson's Instagram and Facebook screenshots," some of which he indicated have not been previously produced. Grant Decl. Ex. J. Plaintiff's counsel also indicated that he had collected 5 GB of Twitter posts of Ms. Johnson that have not been produced (or apparently searched for responsive materials) before. *Id.* The Post-Gazette's counsel asked that these materials be provided immediately, but has not received them.

**B.     Plaintiff's Withholding of Documents and Information.**

The Guild's production of text messages that Plaintiff failed to produce revealed another, significant issue. The Guild's production included text messages between Ms. Johnson and Mike Fuoco in which Mr. Fuoco relayed hearsay that a particular Post-Gazette employee had indicated she heard someone say Ms. Kane had made a remark to someone else about "Black people." This

5

was the apparent genesis of an amendment to Plaintiff's complaint on September 17, 2020, to include three paragraphs alleging Ms. Kane had said "I guess I can't now do anything to Black people! I have to pick better targets," and asserting that this statement reflected the Post-Gazette's motivation in its editorial decision about story assignments for Ms. Johnson. *See* Amended Complaint ¶¶ 25-27 (ECF 17).[2] Deposition testimony has shown that the allegations in the amended complaint are inaccurate, and everyone involved or who heard of the actual remark recognized it as a joke, which no one took seriously and as to which no one took offense. *See, e.g.*, Grant Decl. Ex. K (Garth Dep. at 44-46, 51-52); Ex. L (Smith Dep. at 36).

But the Guild's production of texts Plaintiff withheld also showed that Ms. Johnson discussed this hearsay rumor with Mr. Fuoco, said that she had disclosed and discussed the information with "my lawyer" and encouraged Mr. Fuoco to share the same information with her lawyer (*i.e.*, "sam"). *See* Grant Decl. Ex. M. The Post-Gazette's counsel had previously asked Plaintiff's counsel to identify the source of the amended complaint allegations about the alleged "Black people" comment, but Plaintiff's counsel refused to provide that information. After disclosure of Ms. Johnson's texts in the Guild' production, the Post-Gazette's counsel again asked Plaintiff's counsel to explain why known facetious comments were alleged as supposed statements of the Post-Gazette's actual motivations in the Amended Complaint. *See* Grant Decl. Ex. F, at 2-3. Plaintiff's counsel did not respond. Counsel for the Post-Gazette asked for documents that Plaintiff had withheld as privileged from the time frame when Ms. Johnson and Mr. Fuoco

---

[2] Plaintiff added these allegations after the Post-Gazette filed its Motion to Dismiss, and featured them as a central part of Plaintiff's opposition to the motion, asserting the alleged comment reflected the motivations of racial animus in the actions concerning Ms. Johnson. *See* Response to Motion to Dismiss at 1, 16 (ECF 25).

6

discussed the relayed third-hand hearsay and the complaint was amended, *id.*, but Plaintiff's counsel refused.

### III. ARGUMENT

#### A. The Court Should Order Plaintiff to Make a Complete Production of Documents.

The Post-Gazette's request in this motion is simple inasmuch as there is no dispute that the documents it seeks are relevant and properly discoverable. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."). The Post-Gazette seeks documents concerning Ms. Johnson's claims, her May 31, 2020 tweet, the Post-Gazette's editorial decisions about story assignments thereafter, the involvement of the Guild, Ms. Johnson's numerous press interviews and media appearances, and Ms. Johnson's communications to third parties about what happened. There is no question here that the Post-Gazette's discovery requests are appropriate and relevant. Plaintiff has asserted no objection to any of the Post-Gazette's specific production requests. Accordingly, the burden falls to the Plaintiff to justify not providing relevant discovery. *See In re Diisocyanates Antitrust Litig.*, No. MC 18-1001, 2020 WL 5350318, at *2 (W.D. Pa. Sept. 4, 2020) (after a moving party meets its initial burden to show that requested discovery is relevant, the burden then shifts to the opposing party to demonstrate that it should not have to provide the discovery).

The difficulty is that Plaintiff's document production is incomplete and has been for over three months despite repeated assurances to the contrary. After producing just 23 pages of documents, Plaintiff's counsel made assurances months ago that there were no other responsive documents to produce except for a few communications with a "union steward" (withheld based on a privilege claim Plaintiff later abandoned). The Guild's production then revealed hundreds of

7

responsive text message communications Plaintiff had failed to produce, but Plaintiff continued to resist producing anything more. Then, when the Post-Gazette went through multiple meet-and-confers and other machinations to present the issue to the Court, Plaintiff's counsel indicated that he had not done a thorough electronic search and review of Plaintiff's records (despite prior assurances), and indicated there were gigabytes' worth of additional communications that had not been reviewed or produced, while Plaintiff has still failed to produce text messages and other direct communications with third parties

Discovery under the Federal Rules is dependent on the parties complying with their obligations in good faith. It is not a game of blind man's bluff. The course of discovery in this case reflects that Plaintiff has resisted producing relevant and responsive materials time and again, and forced Defendant to expend time, expense, and resources to get what should have been provided from the outset. It is apparent that Ms. Johnson frequently communicated with third parties about her situation with the Post-Gazette. These communications are important evidence, as shown by the few that have been produced to date. Yet, Plaintiff has consistently refused to produce such communications, saying there are no such communications, yet this has proved to be patently untrue.

The Post-Gazette will continue to try to work with Plaintiff's counsel to obtain, finally, complete production of responsive documents. Production of a complete image of Plaintiff's cell phone would help to that end. But complete production of all responsive documents from all media, including all of Ms. Johnson's communications with third parties, should be compelled. By this motion, the Post-Gazette therefore asks that the Court enter an order requiring Plaintiff to produce all documents responsive to the Post-Gazettes' requests within seven days of this Court's

order on this motion, including all responsive documents and materials including emails, text messages, social media, direct or instant messaging, or other communications.

### B.  The Court Should Order Plaintiff to Provide Withheld Documents for *In Camera* Review.

Aside from failing to produce many documents, it appears Plaintiff has withheld non-privileged communications underlying a fallacious amendment Plaintiff made to the complaint in this action.  As discussed above, Plaintiff amended her complaint on September 17, 2021 to include allegations based on third-hand hearsay accounts of a supposed comment by the Post-Gazette's managing editor in the summer of 2020.  The allegations added to the complaint were not true, and everyone who heard or knew of the comment said it was a joke.

In any event, the daisy chain of communications that led to the complaint amendment should be fully disclosed.  They are not protected by attorney-client privilege.  Ms. Johnson revealed to Mr. Fuoco that she had relayed the information he had provided to her lawyer.  She urged Mr. Fuoco to contact her lawyer directly to repeat the hearsay.  In telling a third party about her communications with counsel, Ms. Johnson waived any privilege that otherwise might have applied.  By encouraging Mr. Fuoco to contact her lawyer directly to relay the same information, she confirmed there was no privilege.

The Post-Gazette has identified four documents Plaintiff has withheld and listed on its privilege log that fall in the periods involving Ms. Johnson with Mr. Fuoco and her counsel, and in the time frame when Plaintiff's complaint was amended to include the fallacious allegations (documents identified as AJPriv_000005, AJPriv_000006, AJPriv_000007, and AJPriv_000008).  Given the vague descriptions of Plaintiff's privilege log, *See* Grant Decl. Ex. N (Plaintiff's privilege log provided January 7, 2022), the Post-Gazette does not know and cannot know whether these documents concern the communications that led to Plaintiff's amended complaint allegations

9

or otherwise are properly withheld. Rather than seeking for these communications to be produced outright, the Post-Gazette asks that they be submitted to the Court for *in camera* review to determine if they were properly withheld and/or raise concerns about the veracity or good faith of the Plaintiff's complaint amendment.

## IV. CONCLUSION

For the reasons set forth above, Defendant respectfully requests that this Court grant this Motion to Compel.

Respectfully submitted,

*/s/ Courtney T. DeThomas*_____

Robert Corn-Revere (*pro hac vice*)
Courtney T. DeThomas (*pro hac vice*)
**Davis Wright Tremaine LLP**
1301 K Street, NW, Suite 500 East
Washington, D.C. 20005
Telephone: (202) 973-4200
Facsimile: (202) 973-4499
bobcornrevere@dwt.com
courtneydethomas@dwt.com

James Grant (*pro hac vice*)
**Davis Wright Tremaine LLP**
920 5th Avenue, Suite 3300
Seattle, WA 98104
Telephone: (206) 757-8096
JimGrant@dwt.com

Patrick K. Cavanaugh
Zachary Gordon
**Del Sole Cavanaugh Stroyd LLC**
Three PPG Place, Suite 600
Pittsburgh, PA 15222
(412) 261-2395
pcavanaugh@dscslaw.com
zgordon@dscslaw.com

10

## CERTIFICATE OF SERVICE

I, Courtney T. DeThomas, certify that on January 12, 2022, I caused a copy of the foregoing to be served upon all parties via the Court's CM/ECF system.

                                        /s/ *Courtney T. DeThomas*
                                        Courtney T. DeThomas