# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Alexis D. Johnson, | ) |
|     Plaintiff, | )   2:20-cv-885-NR |
| | ) |
| | )   Judge Nicholas Ranjan |
| v. | ) |
| | ) |
| PG Publishing Company | ) |
| t/d/b/a Pittsburgh Post Gazette, | ) |
| | ) |
|     Defendant. | )   JURY TRIAL DEMANDED |

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL

Samuel J. Cordes
PA I.D. #54874

310 Grant Street - Third Floor
Pittsburgh, PA 15219
(412) 338-1163 (telephone)
(412) 246-1763 (facsimile)
sjcordes@rothmangordon.com

Attorney for Plaintiff

## I. Introduction

The issues presented by the Post-Gazette are simple. What is not are the misrepresentations Defendant's Motion offers to pretend Plaintiff has not complied with her discovery obligations.

Other than attorney client materials, Johnson has not withheld any documents she has been able to gather. Johnson produced more than 1200 documents and 5 gigabytes of data; provided the archive of her entire Twitter history; all responsive Facebook postings (many of them duplicative of what she already had produced). (*See* Appendix Ex. 1). She produced all responsive text messages she was able to locate on her cell phone (many of these duplicative of what Defendant already has from third party subpoenas) and, on January 3, Plaintiff engaged the services of bit-x-bit, LLC ("bit-x-bit") to image her phone. She was fully cooperative with bit-x-bit, and while bit-x-bit has been unable to obtain text messages beyond those already produced, it is working on a solution that may solve this problem. (*See* Declaration of Freddie Dyroff, bit-x-bit Digital Forensic Analyst, App. Ex. 11). While Defendant says she has not produced documents about media interview/coverage, Johnson produced links to those interviews at AJ_0352,[1] and also at Defendant's request produced every news story discovered by an internet search of her name. (AJ_225-1160).

However, Defendant's Motion misrepresents the situation. The credibility of all Defendant's representations should be judged in that light. In its Motion, Defendant says:

---

[1] Broadcast interviews: Links to interviews disclosed at AJ_000352: 1Hood Media; Pittsburgh Black Media Federation; NPR; NPR On Point; CNN Reliable Sources Podcast; BBC Beyond the News with Danny Bull AM Joy on MSNBC; Alone Together Pittsburgh; AJ_0356: Audacy (Radio and Podcast App); AJ_0434 Report of Guild, June 8, 2020 Press Conference.

1. **It has not received the Twitter disk, (Def's Motion at 5)**.

This is demonstratively false. Defendant filed its Motion at 11:27 pm, on January 12, and said "the Post-Gazette counsel asked that these materials be provided immediately, but has not received them." Actually, Defendant's law firm acknowledged the materials were received at 1:43 p.m that day. (Fed Ex Tracking, App. Ex. 2). They were sent at the direction of Defendant's counsel. (Jan. 11 Email, App. Ex. 3).

2. **Defendant's False Impression About Content of Documents.**

Even Defendant's representations about the content of documents are misrepresentations. For example, Defendant says: "contrary to allegations that she was pulled off coverage of the George Floyd protests, Ms. Johnson stated to others that she was not assigned to protest coverage in the first place." (Def's Motion at 4, without citation). However, a reading of AJ_347 shows Defendant's representation to be false. Johnson actually said the following:

> After COVID-19 started, any "beats" went out the window. I am a general assignment reporter. Also would a "social-media" (normally) reporter, not to be involved in covering a civil rights movement that is literally playing out in real time on social media?
>
> I was told by management "it's a shame we couldn't use you on this major story" because of my tweet. So to imply that I would have never been involved in BLM coverage is simply gaslighting. And if I was never going to cover it..then what is the issue with the tweet to begin with.

(AJ_347, App. Ex. 4).

Either Defendant did not read the tweet is misrepresents, or it intentionally attempts to mislead this Court. This conduct on Defendant's part is bad enough, but there is more.

Defendant claims another produced Tweet contradicts Johnson's claims. Thus, Defendant says, "When she was asked to cover George Floyd's funeral, Ms. Johnson commented on social

media that this was "the opportunity of a lifetime," although she declined the assignment at the behest of the Guild. (Def's Motion at 4, without citation).

It is not surprising Defendant did not cite the Tweet it purports to quote because that document shows how much Defendant, again, misrepresents the whole issue here. In relevant part, the Tweet Defendant selectively quotes actually says.

> I got a call from our copy desk editor who said that Managing Editor Karen Kane told him to ask me if I wanted to go to Minneapolis to cover the George Floyd memorial service. I was immediately confused because the service in Minnesota was...last week....
> He said he didn't know the details...once he did, he told me it was actually happening the next day in Houston. The convo happened at 7 p.m....the service was at noon.
> So now I am searching for flights seeing that it takes 6-8 hours to even fly to Houston from Pittsburgh...How would we pull this off with travel arrangements, packing and getting Credentials for a service that was in 16 hours.
> I immediately called [union representatives] to tell them that the ***PG was literally offering me the opportunity of a lifetime but also making it impossible to make it happen...***.

(AJ_339, App. Ex. 5)(emphasis added).[2]

### 3. Several Hundred text messages between Johnson and Fuoco not produced.

Defendant claims "several hundred text messages between Ms. Johnson and Fuoco and Silver ...were not included in Plaintiff's production." According to Defendant, these text messages were "about Ms. Johnson's situation and the Guild's campaign against the Post-Gazette and communication about a comment rumored to have been made by Post-Gazette Managing Editor Kane that led to amended allegations in the complaint." (Motion at 4).

---

[2] Ms. Johnson's assessment of the situation was not hers alone. David Garth, Kane's assistant managing editor, testified he was skeptical of the assignment; and predicted Ms. Johnson would not be able to do it because of the timing. (DG. 15-28, App. Ex. 7). Indeed, the assignment on such short notice was so absurd, Garth wanted to make sure Johnson understood it ***was not his idea, not even for a second.*** (DG. 28/ln. 9-21, App. Ex. 7).

A series of text messages between Johnson and her union representatives during the July-October 2020 were not recovered, although those documents were available from text messages of the recipients. A few are responsive. For example, the "several hundred text messages" Defendant claims were not produced, include texts concerning the appointment of a new Executive Editor of the Post-Gazette, which is not arguably responsive. (Guild_1600-1602); the alleged resignation of Keith Burris (Guild_1603-1604). At the same time, Johnson produced hundreds of text messages during the period after June 2, in which she discussed various issues with her union representative about the facts relevant to this case. (AJ_1050-1090).

Again, many of these are duplicative of documents obtained from discovery from Defendant's union..[3]

## II.  Argument

### A.   Johnson's IT Consultant, bit-x-bit Is Working to Find Any Responsive Documents Not Already Produced.

Defendant's argument can be summed up on page 4 of its Motion: "As it is now obvious that Johnson texted hundreds of times with just two people about her situation with the Post-Gazette, and the Guild's campaign afterward, it follows that she likely texted with many other people many times about the same subjects. (Def's Motion at 4).

But Defendant's propensity argument simply doesn't follow, especially because Johnson testified she stopped doing media interviews after she retained counsel (AJ 121/ln. 5-8, App. Ex.

---

[3] For example, Guild_1548 was produced by Ms. Johnson as AJ_1081, and 1085; Guild_1549 as AJ_1081-1085; Guild_1550 as AJ_1081-1082; Guild_1551 as AJ_1082, 1086; Guild_1552 as AJ_1082, 1086; Guild_1553 as AJ_1082-1083; Guild_1554 as AJ_1083, 1087; Guild_1555 as AJ_1083, 1087; Guild_1556 as AJ_1084; Guild_1557 as AJ_1085; Guild_1558 as AJ_1084, 1085.

6)[4] and did not text much (if at all) once she obtained legal counsel. (AJ. 34/ln. 13-24). It is entirely normal for Johnson to have texted extensively with her union representatives. That she did show nothing about the likelihood she "texted with other people many times about the same subject."

Defendant has Johnson's text messages throughout June, 2020, and has the text messages from July through October. It has Johnson's social media postings–indeed, it has the entire history of her Twitter account. Defendant seeks an order for something it either already has or will soon have upon the completion of the bit-x-bit extraction.

Johnson has not refused to produce non-privileged documents, and will shortly produce any remaining documents that exist on her phone or other devices. There is no need for an order.

> **B.  Defendant's Claim That Kane Said "If You're Black, You Can Get Away With Anything" As A Joke Does Not Support Requiring Disclosure Of Emails Between Johnson And Her Attorney.**

Defendant next seeks communications between Johnson and her counsel concerning what it calls a "fallacious amendment" to the complaint, which Defendant says was based on "third hand hearsay" of Karen Kane complaints about Blacks, and her ability to manage them.

Defendant says the allegations are "not true" and "everyone" said it was a joke (Def's Motion at 9). Thus, Defendant says, it should be able to view attorney-client communications.

Although Defendant's allegations of fallaciousness do not really address the question of

---

[4] Deposition transcript excerpts will be denoted by the initials of the deponent's first and last name, followed by the page and, where appropriate line number, where the testimony appears. Thus, testimony of Alexis Johnson will be designated AJ, and is in the Appendix as Exhibit 6; testimony of David Garth will be designated DG and is in the Appendix as Exhibit 7; testimony of Kevin Flowers will be designated KF and is in the Appendix as Exhibit 8; testimony of Nora Smith will be designated NS and is in the Appendix as Exhibit 9; testimony of Karen Kane will be designated KK and is in the Appendix as Exhibit 10.

whether it is entitled to discover email between Johnson and her attorney, Defendant's remarkable argument calls for a brief examination of the facts.

In June 2020, shortly after Defendant banned Johnson from covering protests, and related issues, Kane, Defendant's Managing Editor, complained about African Americans to David Garth, then Assistant Managing Editor, and now Defendant's Managing Editor.

Kane told Garth: "If you're Black, you can get away with anything." (KF. 14/ln. 18-25, 15/ln. 1-3, App. Ex. 8).

Kane complained to Garth that: "well I guess I can't say anything about black people anymore." (DG. 44/ln. 5-8, App. Ex. 7). According to Garth, Kane told him "I can't make comments about black people?" (DG. 45/ln. 24-25, 46/ln. 1-4), and " I guess I can't say anything bad about black people anymore. (DG. 51/ln. 2-15).

Kane then requested Garth "make me a list of people I can't say anything about" to which Garth replied, "well, you can put me on the top of that list." (DG. 44/ln. 10-18, 45/ln. 9-15, App. Ex. 7). Garth testified the "joke" in Kane's complaints was her telling him "you should make me a list of people, I can't say anything about, to which Garth responded "you can put me at the top of the list. (DG. 45/ln. 21-25, 46/ln. 1-18).[5]

Whether joking or not, what Kane said affected Garth enough that he appeared to be upset. (KF. 15/ln. 13-22, App. Ex. 8), or at least surprised and very taken aback. (NS. 20/ln. 2-7, App Ex. 9).  Soon after  he relayed what Ms. Kane said to two of his assistant copy editors: Kevin Flowers, who Garth trusted, (DG. 52/ln. 4-21, App. Ex. 7), and Nora Smith, a newer copy

---

[5] According to Garth, Kane was describing people who were untouchable. "The joke was she wanted to know who she should not try to...say anything about or do anything with. That was the joke, and I'm number one." (DG 45/ln. 19-23, App. Ex. 7).

editor. (NS. 10/ln. 18-25, 11/ln. 1-4, App. Ex. 9).

Garth repeated to Flowers and Smith what Kane had just told him: "if you are black, you can get away with anything." (KF. 14/ln. 18-25, 15/ln. 1-3, App. Ex. 8), and "I guess you can't do anything to black people anymore." (NS. 11/ln. 5-25, 12/ln. 1-12, App. Ex. 9).

Flowers does not recall Garth laughing or indicating Kane comments were a joke, (KF. 16/ln. 5-12, App. Ex. 8); while Smith remembers Garth saying Kane made the comments in a joking tone. (NS. 12/ln. 19-20, App. Ex. 9).

Nonetheless, two days later, Garth took Flowers aside in a private conference room; indicated he wanted to "clarify what he was feeling," and basically said he now was not bothered by Kane's comments. (KF 16/ln. 13-25, 17/ln 1-25. 18/ln. 1-6, App. Ex. 8).

During the Garth-Flowers-Smith group conversation, Garth may also have noted that Kane followed her complaints that " if you are black, you can get away with anything, and she could not say anything about black people anymore," (KF 14/ln. 18-25, 15/ln. 1-3, App. Ex. 8); (NS. 11/ln. 5-25, App. Ex. 9), by noting she had to find better targets. Thus, Ms. Smith testified:

> Q. Did Mr. Garth mention in what Miss Kane said was that she had to pick better targets?
>
> A. (Smith). ***I do feel like I remember some kind of wording like that, but I just–I hesitate to say yes definitively because I don't remember the exact wording.***

(NS. 15/ln. 3-12, App. Ex. 9).

Another Post-Gazette employee relayed the story to Johnson. Johnson was told that Kane informed Garth that she guessed she can't do anything to black people and [so] she needed to pick better targets. (AJ. 28/ln. 2-21, App. Ex. 6).

Whether the word "target" was used or not, Garth confirmed that after Kane complained

about her inability to say anything bad about blacks any more, she suggested a list be made:

> She was asking for a list of people who she can't say..or do anything about...people who are untouchable...and I was saying, you can put me on top of the list. I was just joking. The joke is she wanted to know who she should try not to...say anything about or do anything with...That was the joke, and I was like, well, I'm number one.

(DG. 44/ln 10-25, 45/ln.1-23, App.. Ex. 7).[6]

The reason for making a list of "untouchable people," and Kane's complaint that Blacks' can get away with anything itself suggests Kane indeed did comment on picking better targets. Lists are made to include, or exclude, targets.

Defendant claims all this is "third hand hearsay," (Def's Motion at 8), but of course, Defendant is wrong. First, evidence of Kane's complaints that Blacks get away with anything, and that she can't say anything bad about blacks, and Ms. Smith's testimony concerning Kane's complaints to Garth about targets, is circumstantial proof of the managerial viewpoint on blacks, and people who complain of discrimination that prevailed at the Post-Gazette when Defendant acted. Thus, it would not be offered to prove the truth that blacks get away with anything, or that Kane can't say anything bad about blacks.[7]

---

[6] Kane, for her part, denies telling Garth that she can't say anything about black people anymore, but, if so, she was joking. (KK. 134/ln. 21-25, 135/ln. 1-25, 136/ln. 1-6, App. Ex. 10).

[7] But even if Kane's and Garth's statements were offered to prove the truth of the matters asserted they are admissible as exceptions to the definition of hearsay. First, the statements made by Kane and Garth are admissions by the agent of the Post-Gazette. *Ryder v. Westinghouse Elec. Corp.*, 128 F.3d 128, 134 (3d Cir. 1997); Fed.R.Evid. 801(d)(2)(D). Kane spoke as the Managing Editor of the Post-Gazette to her then Assistant Managing Editor, Garth, about matters over which both exercised authority. Thus, both spoke as Defendant's agent within the scope of employment. Garth's rendition of the statements made by Kane to his assistants, Flowers and Smith, present no double hearsay issue, because each level of hearsay falls into an applicable exception, under Fed.R.Evid 805. In summarizing Kane's statements, Garth acted within the scope of his employment as Assistant Managing Editor, addressing his assistants on a **(Cont'd)**

Nor does Defendant's search for refuge in its claim that everyone recognized Kane's complaints as a joke (Def's Motion at 7), entitle Defendant to rummage through Johnson's communications with her counsel.

First, Defendant's claim about the effect of the alleged "joke" is not consistent with the record. Shortly after Kane talked Garth, he found it important to tell two assistants what she said. Flowers testified Garth seemed upset; Smith testified Garth was surprised and very taken aback by what Kane told him. *See* (KF. 15/ln. 13-22, App. Ex. 8); (NS. 20/ln. 2-7, App. Ex. 9). Then two days later, Garth apparently was still concerned, because he took his trusted assistant Flowers aside to revisit the conversation. (KF. 16/ln. 13-25, 17/ln 1-25. 18/ln. 1-6, App. Ex. 9).

Moreover Kane's observations that Defendant tries to dismiss as just "jokes" reveals the mindset of a decision-maker concerning her views on both Blacks, and Blacks who complain of race discrimination. The Courts have held such remarks, even if in jest, are probative of pretext, and therefore, relevant in a discrimination case. *See Spulak v. Kmart Corp.*, 894 F.2d 1150, 1155 (10th Cir. 1990)(age remarks made in jest probative of pretext).[8]

Defendant's Motion claims Johnson would not disclose the names of witnesses she was aware of at the outset concerning the Kane complaint. (Def's Motion at 6). But again,

---

**(Cont'd)** matter provided by the Managing Editor. Thus, Garth's recitation of Kane's statements is an admission by a party opponent under Fed.R.Evid. 801(d)(2)(D). *Ryder*, 128 F.3d at 134.

[8] *Rollins v. TechSouth, Inc*, 833 F.2d 1525, 1530, (11th Cir. 1987)(comments, albeit joking, about age, raise inference that age discrimination motivated decision); *Cooper v. Asplundh Tree Expert Co.*, 836 F.2d 1544, 1548 & n. 2 (10th Cir. 1988)(Even if jury found biased statements made in jest, reasonably could infer they were meant to be disparaging, regardless of their tone); *Smith v. Consolidated Mutual Water Co.*, 787 F.2d 1441, 1442 n. * (10th Cir. 1986)(although references to plaintiff as "an old goat" were arguably made in jest, reasonable juror could infer they were meant to be disparaging, regardless of their tone)

Defendant's claim is false. In Interrogatory answers, and, indeed, in her initial disclosures, Ms. Johnson listed: Karen Kane; David Garth; Mike Fuoco; Willa Kindle; Tyler Battiste; and Nora Smith as witnesses to the statements. (Interrogatory 6 Answer, Ex. 13). Garth identified for the first time, that he also had told Kevin Flowers, his trusted assistant, about Kane's comments. *See* (DG. 52/ln. 4-25, 53/ln. 1-10, App. Ex. 7). In addition, Ms. Johnson testified about her knowledge of the Kane complaint. (AJ. 27-35, App. Ex. 6).

Defendant appears to suggest the fact Johnson approached a potential witness about corroborating a fact related to her claim waives attorney-client privilege. Defendant references a text message in which Johnson tells her union representative that she told her attorney about Kane's comment, and asked if that had been confirmed; requests the representative contact her attorney; and asks the representative if he could send names of witnesses to her attorney. *See* (Guild 1558-59, 1561-62, App. Ex. 12). But Johnson requesting witness information be forwarded to her counsel does not waive the attorney-client privilege. It discloses no confidential communications, or advice. *U.S. v. O'Malley*, 786 F.2d 786, 794 (7th Cir. 1986)(Client does not waive her attorney-client privilege merely by disclosing, to third party, facts communicated to attorney).[9]

Johnson has disclosed nothing that waived her right to communicate with her counsel. Defendant's attempt to manufacture a "joke" exception does not change that and Defendant's Motion to Compel production of attorney-client email should be denied.

---

[9] Likewise any documents prepared by non-attorneys acting at an attorney's request is protected as work product *Willemijn v. Apollo Computer, Inc.*, 707 F. Supp. 1429, 1444 (D. Del. 1989)(citing *United Coal Cos. v. Powell Const. Co.*, 839 F.2d 958, 966 (3d Cir. 1988)(It is the settled law of this Circuit that work product protection extends to documents prepared by non-attorneys acting at an attorney's request.").

Respectfully submitted,

Rothman Gordon, P.C.

*/s/ Samuel J. Cordes*
Samuel J. Cordes
Pa. I.D. #54874

310 Grant Street - Third Floor
Pittsburgh, PA 15219
(412) 338-1163 (telephone)
(412) 246-1763 (facsimile)
sjcordes@rothmangordon.com
Attorney for Plaintiff